Helen LINDEMANN, Plaintiff-Respondent,

v.

The GENERAL AMERICAN LIFE INSURANCE COMPANY, a Missouri corporation, Defendant-Appellant.

No. 34428.

Missouri Court of Appeals, St. Louis District, Division One.

Sept. 12, 1972.

Murphy, Kortenhof & Ely, St. Louis, for defendant-appellant.

Bruere & Rollings, Dale L. Rollings, St. Charles, for plaintiff-respondent.

WEIER, Judge.

Suit was brought by Helen Lindemann, widow of Herbert J. Lindemann, against defendant insurance company for accidental death benefits under the provisions of a group policy issued to McDonnell Douglas Corporation, Mr. Lindemann's employer. Trial to a jury resulted in a plaintiff's verdict and judgment for $8,000.00. We are requested to reverse because the court erred in failing to direct a verdict at the close of all the evidence in favor of defendant for the reason that the evidence was insufficient to support plain-

tiff's claim against defendant. As a corollary to this, defendant further contends that, since the evidence failed to support the verdict and judgment, it was error to give plaintiff's verdict-directing instruction because it was not supported by the evidence. Obviously, if the first contention is well taken, the second necessarily follows, because issues submitted in instructions to the jury must be supported by the evidence. Brassfield v. Sears, Mo., 421 S.W. 2d 321, 323[1].

In effect, there is really only one issue for decision: Is plaintiff's evidence sufficient to support her verdict and the resulting judgment? Defendant relies upon the terms of its policy in holding plaintiff to the requirements that the evidence prove Herbert Lindemann died as a result of bodily injuries "caused solely through external, violent and accidental means" and that his death was not "caused directly or indirectly, wholly or partly by physical * * * infirmity * * * or by any other kind of disease." There is no question that plaintiff has the burden to prove the injury and death of her husband occurred within the terms of the policy of insurance. Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 921[2]. In testing the sufficiency of the evidence, it is to be viewed and considered in light of the issues submitted in plaintiff's verdict-directing instruction. Green v. Sutton, Mo., 452 S.W.2d 200, 206[2]. But in testing the sufficiency of the evidence, we review those facts supported by the evidence most favorable to plaintiff. Mahn v. American Life & Accident Insurance Co., Mo.App., 390 S.W.2d 573, 577[6].

The jury could have found and inferred that on February 28, 1969, Herbert Lindemann arrived at his work, about 7:00 a. m. o'clock. He asked a fellow employee, Doyne Johnson, to lift him on a platform elevated by a fork-lift truck to a storage rack fifteen feet from the floor. After stopping the platform at this level, Lindemann suddenly fell, striking some metal file cabinets and then rolling off and down

to the floor. He was bleeding from a wound on the back of his head. A nurse was summoned and he was taken to the hospital. Johnson did not see Lindemann after he raised the platform above his head because the platform obscured his vision. He saw him only when he fell off the platform and could not describe what Lindemann did or did not do preceding the fall.

Lindemann was treated for a laceration on the back of the scalp and abrasions of the back and left shoulder in the emergency room of the hospital and admitted for observation. He originally stated that he was dizzy and had fallen against a desk while on his feet. But after six hours, when his blood pressure dropped and his pulse rate increased, he told the doctor he had fallen ten to twelve feet from a forklift truck. He had also told this version of a high fall to a hospital nurse in the presence of his wife.

Subjectively, Lindemann's health had been good during the two-year period before his fall, except for a sinus condition earlier that year. He had no history of liver or kidney ailments, nor did he complain of abdominal pain, nausea or blackouts. He had not complained of nor shown any sign of illness the night before or the morning of the fall. He had nothing to drink the night before or that morning. But internal bleeding was detected by the doctor at the hospital after the drop in blood pressure. Upon an emergency operation, the round ligament was found to have pulled free from the liver, causing active bleeding. About four pints of blood were evacuated from the abdominal cavity. The bleeding was stopped, the abdomen closed, and he was returned to his room. The next day, March 1, 1969, his condition stabilized. Then that evening he became agitated, nervous and disoriented. His condition rapidly degenerated and he died early on the morning of March 2, 1969.

The surgeon who operated on Lindemann found during the course of the operation that Lindemann's liver was cirrhotic, very hard with large lumps. But he gave as his opinion that Lindemann's death was caused by the loss of blood from the liver injury, which in turn had been caused by the fall. The loss of so much blood caused shock with resultant decreased flow of blood to the liver, especially, and possibly the kidneys, heart and brain. Because of damage to the organs, Lindemann was not able to survive. The surgeon readily admitted that the severely cirrhotic liver was a strong contributing factor. Given a normal liver, the doctor could not say Lindemann would have survived, but the chances would have been very good. Without the fall, he was of the opinion that Lindemann would not have died when he did.

Defendant's contention that plaintiff failed to make a submissible case rests upon two basic reasons. First, defendant asserts the evidence failed to prove "accidental means", as required by the policy, as the cause of Mr. Lindemann's injuries. Counsel for defendant points out there is no proof to show what caused Lindemann to fall, whether "solely through external, violent and accidental means" or by fainting or a dizzy spell caused "by physical or mental infirmity." Thus, citing *Caldwell,* supra, counsel maintains plaintiff failed to sustain her burden "to show an accidental cause of insured's death." Counsel overlooks the fact that plaintiff has fulfilled the requirement by proof of the sudden, unexpected and unforeseen event;[1] that is, the fall itself. This was the "external, violent and accidental" happening that is called for in the policy to make its accidental death clause

1. We have defined "accident" as used in accident insurance to be the same as its common meaning, that is, an event that takes place without foresight or expectation; an undesigned, sudden and unexpected event; a mishap resulting in injury to person. Murphy v. Western & Southern Life Insurance Co., Mo.App., 262 S.W.2d 340, 342.

become, in part, applicable. Aside from proof of death, the remaining element which plaintiff must prove to satisfy her burden is causation between the accident and insured's death. In other words, plaintiff must carry the burden to prove that the death of the insured resulted from accidental means. Gennari v. Prudential Insurance Company of America, Mo., 335 S. W.2d 55, 60[1]; Caldwell v. Travelers' Ins. Co., supra, 305 Mo. 619, 267 S.W. 907, 921[2]. Once having shown the circumstances of the fall and the resulting injury leading to insured's death, plaintiff has made a prima facie case. If defendant insurer then asserts the fall was not accidental but rather it was caused by infirmity, disease or some other means which would place the predisposing cause of the fall outside the terms of the policy, then, absent evidence supporting its theory introduced in plaintiff's case, defendant must go forward with the proof. It may not rely merely upon a conjecture that the fall might or could have been caused by disease or infirmity. Beimdiek v. New York Life Ins. Co., Mo.App., 183 S.W.2d 379, 383[7]; State Farm Mutual Automobile Insurance Company v. Underwood, Mo., 377 S.W.2d 459, 462[1].

■ Defendant's second reason to support its claim of insufficient evidence with resulting failure of proof is that, according to the surgeon's testimony, the fall was not the sole cause but was at most a contributing cause with the liver condition. The doctor, as previously indicated, admitted that the severely cirrhotic liver was a contributing factor, but he maintained that Lindemann's death was caused by the loss of blood from the injury to the liver. He readily admitted Lindemann's chances of survival would have been better if he had had a normal, healthy liver. But the essential, precipitating cause of the insured's death was the internal bleeding caused by the injury.

■ We are here concerned with the direct, proximate cause of Lindemann's death. We are not concerned with predisposing or remote causes. As has been stated: "It is well settled that although a person may have a weakened body and be infirm as the result of such things as age or disease, nonetheless if death is directly caused by external, violent and accidental means the accidental death benefit provisions apply and recovery may be had. For an injury which might naturally produce death in a person of a certain condition of health is the cause of his death, if he dies by reason of it, even if he would not have died if his previous health had been different. In such event the condition of previous health is merely a predisposing and remote cause and not the direct, proximate cause, as contemplated by the policy, notwithstanding such condition might have cooperated, concurred in and contributed to death." Gennari v. Prudential Insurance Company of America, Mo., 335 S.W.2d 55, 62[5].

Under the circumstances and the reasonable inferences which may be derived from them in the evidence here present, plaintiff has carried her burden of proof and has made a submissible case. Since this also disposes of the attack on the instruction as not being supported by the evidence, we find no error by the trial court in those matters submitted to us.

The judgment is affirmed.

BRADY, C. J., and CLEMENS and KELLY, JJ., concur.