Sophia BROCK, Appellant,

v.

FIREMENS FUND OF AMERICA INSURANCE CO., et al., Respondent.

No. 43001.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 10, 1982.

Mogab, Hughes, Attorneys, Inc. by Richard L. Hughes, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney by William L. Davis, M. Jane Christen, St. Louis, for respondent.

SATZ, Judge.

In this cause, plaintiff Sophia Brock, widow of Elmo L. Brock, sued defendant, Aetna Life & Casualty Insurance Company for accidental death benefits under a group life insurance policy issued by defendant to Western Auto Supply Company, Elmo Brock's employer. Defendant did not dispute that Elmo Brock was covered under the group policy at the time of his death and that under the policy, plaintiff was his beneficiary. The jury below returned a verdict in favor of defendant and plaintiff appeals. We reverse and remand for retrial.

On January 19, 1977, Elmo Brock was employed as a salesman at a Western Auto store in St. Louis. That evening, after the store had closed for the day, Mr. Brock went to the stockroom to turn off the lights in the store, as was his routine before leaving for home. While in the stockroom, Mr. Brock apparently fell to the floor and a fellow employee found him there a few minutes later. Mr. Brock did not know what caused him to fall and no one else witnessed his mishap. Mr. Brock was injured in the fall and later that evening was admitted to a hospital where his injury was diagnosed as a broken hip. It was subsequently determined that Mr. Brock would need surgery to repair the hip injury and he remained at the hospital in anticipation of surgery.

Prior to his injury on January 19, 1977, Mr. Brock had a lengthy history of arteriosclerotic heart disease. To relieve the danger and discomfort of this heart ailment, Mr. Brock had for several years prior to the hip injury, taken regular doses of several medications, including a blood thinner. In anticipation of hip surgery, Mr. Brock was taken off the blood thinning medication and was given a blood coagulent instead. While this change in regimen admittedly placed a greater strain on his heart, it was considered necessary to avoid excessive bleed-

ing during surgery. Prior to his scheduled surgery, Mr. Brock was examined by a heart specialist in the hospital and was declared a fit candidate for surgery. Mr. Brock was by nature a nervous person and his anxiety was noticeably apparent while awaiting surgery. On the afternoon of January 21, 1977, Mr. Brock was transported to the operating room for hip surgery. While in the surgical waiting room, Mr. Brock had a heart attack and died. Plaintiff's medical expert testified that Mr. Brock's accident, combined with his weakened heart, caused his fatal heart attack.

Plaintiff contended that Mr. Brock's death was a result of the injuries he sustained in the accident, and plaintiff, thus, claimed she was due accidental death benefits under the policy in the amount of $10,000. This claim was in addition to the regular death benefits of the policy in the face amount of $10,000. Defendant refused to pay plaintiff's claim for accidental death benefits.

Defendant contended that the specific terms of the policy excluded recovery of accidental death benefits in this case. The policy required that the injury claimed as the cause of death be suffered in a "non-occupational" accident and also required that the death of the insured employee occur as a direct result of the accidental injury "to the exclusion of all other causes."[1] Defendant contended that Mr. Brock's accident was occupational in nature. Defendant also contended that the accidental injury was not the primary cause of death but rather the pre-existing heart condition was the cause of death. For both of these rea-

sons defendant denied plaintiff's claim for accidental death benefits under the policy. Plaintiff sued defendant for the $10,000 face amount of the accidental death benefits and for vexatious refusal to pay her claim. At the close of plaintiff's evidence, defendant was granted a directed verdict on plaintiff's claim for vexatious refusal to pay. The jury returned its verdict for defendant on plaintiff's claim for accidental death benefits.

On appeal, plaintiff contends that Missouri courts have placed a special meaning on the term "to the exclusion of all other causes" in cases involving accidental death benefits and contends the jury needed instruction on that meaning to correctly decide the case as submitted. Thus, plaintiff argues that the trial court erred in failing to define the term, "to the exclusion of all other causes," as used in the verdict directing instruction.[2]

■ Plaintiff's claim of error on this point is grounded in the rule that accidental death benefits are recoverable in Missouri as long as the accidental injury directly causes death, even if the deceased would not have died from that injury had his previous health been different. *Gennari v. Prudential Ins. Co. of Am.*, 335 S.W.2d 55, 62 (Mo. 1960); *Lindemann v. General American Life Ins. Co.*, 485 S.W.2d 477, 480 (Mo. App. 1972). A preexisting condition, if only a remote and predisposing cause of death, does not preclude recovery of accidental death benefits. *Gennari, supra* 335 S.W.2d at 62; *Lindemann, supra* 485 S.W.2d at 480; *Harris v. New York Life Ins. Co.*,

1.  The policy term reads:
    "[The policy pays accidental death benefits] if an employee suffers a non-occupational bodily injury caused by an accident, and as a direct result of such injury and to the exclusion of all other causes sustains [death] within not more than ninety days after the date of the accident which causes such injury . . . ."

2.  Instruction 2, the verdict directing instruction, reads:
    "Your verdict must be for plaintiff if you believe:
    First, defendant issued its policy of life insurance to Western Auto Supply Company

insuring the life of Elmo Brock against accidental death, and
Second, the policy was in force on January 21, 1977 when Elmo Brock died, and
Third, plaintiff then was the beneficiary of the policy, and
Fourth, Elmo Brock suffered a non-occupational bodily injury, and
Fifth, such injury was caused by an accident, and
Sixth, as a direct result of such injury and to the exclusion of all other causes, Elmo Brock lost his life."

516 S.W.2d 303, 307–308 (Mo. App. 1974). This rule obtains even if the governing policy specifically requires death be caused by an accidental injury "directly and independently of all other causes." *Harris, supra* at 304, 308–309; *also see Lindemann, supra,* 485 S.W.2d at 478 ("not caused directly or indirectly, wholly or partly by physical infirmity or disease"). Plaintiff concludes that these cases cast a special legal meaning on the policy term in question so that a definitional instruction for the term was required.

■ These cases, however, do not specifically require that a definitional instruction be given when the policy term "to the exclusion of all other causes" is used in a verdict directing instruction. Generally, definitional instructions are utilized when necessary to make the instructions understandable to the average juror. MAI, How to Use This Book, p. XCV (1981). MAI recognizes that some terms, when used in jury instructions, should always be defined but a definition of the term "to the exclusion of all other causes" is not one of those prescribed by MAI. *See* MAI 11.00–16.06. Even if not mandated by MAI, however, a trial court must define for the jury legal or technical terms occurring in the instructions, for their meaning is not within the ken of the ordinary juror. *See Yamnitz v. Polytech, Inc.,* 586 S.W.2d 76, 81 (Mo. App. 1979) ("substantially performed"); *Cunningham v. Hayes,* 463 S.W.2d 555, 563–564 (Mo. App. 1971) ("negligence" in res ipsa loquitur); *Estate of Fugett,* 596 S.W.2d 66, 70 (Mo. App. 1980) ("estate by the entirety"); *see also, Huff v. Union Elec. Co.,* 598 S.W.2d 503, 510 (Mo. App. 1980);[3] On the other hand, the meaning of ordinary words

used in their usual or conventional sense need not be defined for the jury, since the average juror would commonly understand their meaning. *See Huff v. Union Elec. Co., supra* at 510 ("improvements"); *S.P. Personnel Assoc. v. Hospital Bldg. & Equip. Co.,* 525 S.W.2d 345, 350 (Mo. App. 1975) ("hire"). The policy term in issue, "to the exclusion of all other causes," does not contain words which are of themselves legal or technical in nature. If the jury were to apply these words in their usual and conventional sense, however, *any* contributing cause could preclude plaintiff's recovery, since the conventional and literal meaning of the policy term would encompass any and all causes. For example, plaintiff's evidence was that Mr. Brock's preexisting arteriosclerotic condition was a contributing cause in his death. Thus, under the instructions, as given, plaintiff could be precluded from recovery since the accidental injury was not literally the sole cause of death "to the exclusion of all other causes." This result would be contrary to the interpretation of accidental death policies made by our Missouri courts. Therefore, in this setting, the policy term has a meaning in law different than it has in common parlance and its legal meaning should be defined to the jury by a proper instruction. *See Yamnitz v. Polytech, Inc., supra* 586 S.W.2d at 81; *Cunningham v. Hayes, supra* 463 S.W.2d at 564.

■ Plaintiff did offer an instruction defining the policy term under Missouri law.[4] The trial court refused to give the instruction because it was not "simple and impartial and free from argument;" i.e., it failed to follow the MAI format. Rule 70.-

---

3. Recent revisions of MAI now require that where the terms "negligence" and "substantially performed" are used in an instruction, they must be defined. *See* MAI 11.02 et seq., Notes on Use (1978 Revision); MAI 16.04, Notes on Use (1980).

4. Refused Instruction B reads:
   "The Court instructs the jury that a person's death is deemed to be caused as a direct result of bodily injury 'caused by an accident', 'and as a direct result of such injury and to the exclusion of all other causes' as

those terms are used in these Instructions if death directly results from the bodily injuries sustained in the accident, even though at the time of the bodily injury, the person may have had a weakened body or been infirmed as a result of such things as age and disease. In such event the condition of a person's previous health is merely a predisposing and remote cause and not the direct proximate cause of death, notwithstanding that such preexisting condition might have cooperated, concurred in or contributed to death."

02(e); *Henderson v. St. Louis Housing Authority,* 605 S.W.2d 800, 802 (Mo. App. 1979). Defendant makes this same argument on appeal. We disagree.

We have previously set out the proffered instruction in issue in the margin. *See* Footnote 4, *supra.* The instruction is lucid, succinct and properly states the law. We find no explicit or implicit partiality or argument and, having carefully read defendant's brief, we find defendant fails to demonstrate any of these faults. *See, e.g., Stogsdill v. General Am. Life Ins. Co.,* 541 S.W.2d 696, 700 (Mo. App. 1976). Arguably, the last sentence of this instruction could have been eliminated. At worst, it may be redundant but it is impartial and free from argument. The arguable redundancy does no real violence to the MAI requirement of simplicity. Additionally, we note the use of "direct" and "proximate" in the last sentence of the instruction. We do not find that the term "proximate" introduces legal jargon which itself must be defined. *See Williams v. Hyman-Michaels Co.,* 277 S.W. 593, 594 (Mo. App. 1925). The juxtaposition of "direct" and "proximate" clearly would be understood by the jury as a lawyer's use of synonomous terms. *Cf. Creech v. Blackwell,* 318 S.W.2d 342, 351 (Mo. 1958). The test, after all, for a proper instruction is not perfection, but whether it is "substantially correct," *Stahlheber v. American Cyanamid Company,* 451 S.W.2d 48, 62 (Mo. 1970), and whether it follows the MAI format. This instruction did. Therefore, the trial court erred in failing to submit the tendered definitional instruction. The jury needed definition of the legal or technical term. Definition by instruction was especially crucial here, because the jury's application of the term's common and ordinary meaning would be antithetical to the well-established legal interpretation of the term and would deny plaintiff's recovery of benefits. For this error, the judgment should be reversed and remanded for new trial.

■ Most of plaintiff's other points of appeal raise issues which are unlikely to arise on retrial. However, we address one other matter which may arise on retrial. Plaintiff asserts the trial court erred in failing to define the term "course of employment" as it was used in Instruction 4. Instruction 4 was a definitional instruction for the term "non-occupational injury." Accidental death benefits were payable under the policy in this case, only if the injury causing death was "non-occupational." Instruction 4, which defined "non-occupational injury," directly tracked the definition set out in the policy. In essence, "non-occupational injury" was defined as an injury which does not arise in the course of employment for compensation.[5] Plaintiff contends this definition is insufficient and without further definition of the term "course of employment" gave the jury a roving commission to determine the meaning of "course of employment" as they saw fit. Plaintiff points out that MAI 13.05 provides a definition for "scope and course of employment" and argues it was error not to give that instruction here.[6]

The Notes on Use for MAI 13.05 provide that this instructional definition *may* be given where the "master alleges that the servant was not on the master's business" and the Notes further provide the definition *must* be given "[w]hen the phrase 'scope and course of employment' or the phrase 'scope and course of agency' is used" (emphasis added). *See* MAI 13.05, Notes on Use 1978 Revision. This instruction was tailored for use in cases involving the doctrine of respondeat superior where the prin-

---

5. Instruction 4 reads:
"The term 'non-occupational injury' as used in these instructions means an accidental bodily injury which does not arise, and which is not caused or contributed to by, or as a consequence of, any injury which arises, out of or in the course of any employment or occupation for compensation or profit."

6. MAI 13.05 reads:
"Acts were within the 'scope and course of employment' as that phrase is used in this [these] instruction[s] if:
1. they were a part of the work (name of servant) was employed to perform, and
2. they were done by (name of servant) to serve the [business] [interests] of (name of master)."

cipal denies liability to a third person for some act of his agent, because the agent was not acting within the "scope and course of his employment." *See* MAI 13.05 Notes on Use (1978). Admittedly, here the issue can be couched or framed in the same terminology; i.e., whether Mr. Brock's injury occurred during the "course of his employment." But, Mr. Brock did not negligently injure a third party. If he did and defendant denied liability because Mr. Brock was not within the "scope and course of his employment," the denial would raise policy questions and legal issues concerning the "scope and course of employment" which have been repeatedly discussed and litigated. *See, e.g.,* W. Seavey, *Agency* § 87 et seq.; *Burks v. Leap,* 413 S.W.2d 258, 266 (Mo. 1967); *Wagstaff v. City of Maplewood,* 615 S.W.2d 608, 610–611 (Mo. App. 1981). We need not set them out here. Suffice it to say, plaintiff has made no showing that these same policy questions and legal issues are raised by the use of the term "course of employment" here, and, thus, require the definitional instruction MAI 13.05. Moreover, there is no showing that the "course of employment" contemplated by the policy was unclear or ambiguous. Our Missouri courts "turn to the Workmen's Compensation Act in determining the meaning of the word 'employee' as used in exclusion clauses of liability insurance policies," *Ward v. Curry,* 341 S.W.2d 830, 836 (Mo. 1960), and in so doing, find the term "out of or in the course of employment" is plain and unambiguous. *See Gage v. Connecticut General Life Insurance Co.,* 273 S.W.2d 761, 764–765 (Mo. App. 1954). Similarly, here, in context, the term "course of employment" was plain and unambiguous and the jury needed no instruction to define a term well within their ken. Finally, from the record, it appears the insurance policy gave no special meaning to the term "course of employment" and, thus, the jurors, as employers and employees, needed no guidance to interpret the intended coverage of the policy in question. On retrial, this term need not be defined by the court. On appeal, plaintiff does not contest the directed verdict entered against her on her claim for vexatious refusal to pay.

Judgment on plaintiff's claim for accidental death benefits reversed. Cause remanded for trial on this issue.

SMITH and PUDLOWSKI, JJ., concur.