# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2120WM

_____

John D. Riedl,                          *
                                        *
            Appellee,                   *
                                        *   On Appeal from the United
      v.                                *   States District Court
                                        *   for the Western District
General American Life Insurance         *   of Missouri.
Company,                                *
                                        *
            Appellant.                  *

_____

Submitted: January 10, 2001

Filed: April 20, 2001

_____

Before RICHARD S. ARNOLD and BOWMAN, Circuit Judges, and KYLE,[1] District
      Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

This case arises under 29 U.S.C. § 1132(a)(1)(B), the Employee Retirement
Income Security Act (ERISA). The defendant, General American Life Insurance
Company, appeals the District Court's denial of its motion for summary judgment and
the Court's grant of summary judgment in favor of the plaintiff, John D. Riedl. General
American also asserts that the Court erred in applying a de novo standard of review to

_____

[1]The Hon. Richard H. Kyle, United States District Judge for the District of
Minnesota, sitting by designation.

the plan administrator's decision to deny benefits, and that the Court erred in awarding Mr. Riedl attorneys' fees. We hold that genuine issues of material fact remain for trial, and therefore we reverse and remand for further proceedings.

## I.

Mr. Riedl began working for Phillips Petroleum Company in 1971. He participated in Phillips's long-term disability insurance plan, which was administered by General American. Mr. Riedl has experienced chest pains since 1986 and suffered a heart attack in 1993. On April 19, 1995, Mr. Riedl, then shift foreman, called in sick, complaining of persistent chest pains. During the months that followed, he remained on medical leave because of his chronic chest pain. In August of 1995, he underwent an angioplasty.

In mid-September of 1995, Mr. Riedl's cardiologist, Dr. Martinez-Arraras, released him to return to work without any restrictions. Mr. Riedl wrote a letter to General American stating that his doctor had released him to return to work, and that he felt better. He also included a list of medications he had to take and informed General American that he had to undergo more medical testing. General American's doctor approved Mr. Riedl's return to work with some restrictions. However, sometime before September 18, General American offered Mr. Riedl an Early Retirement Severance Package, which he accepted.

On November 18, 1995, Mr. Riedl applied to General American for long-term disability benefits. On November 20, Dr. Rohaidy, a neurologist, completed an Attending Physician's Statement of Disability form. She noted Mr. Riedl's complaints of chest pain but deferred to Dr. Martinez-Arraras on the issue of Mr. Riedl's total disability. On December 4, 1995, Dr. Edilberto R. Miguel completed an Attending Physician's Statement of Disability form stating that Mr. Riedl complained of chronic chest pains radiating down his left shoulder and arm. Dr. Miguel indicated that while

Mr. Riedl was totally disabled from his own job, he was not totally disabled from other work. Four days later, Dr. Martinez-Arraras completed the same form, and drew the same conclusions as Dr. Miguel.

On December 20, 1995, General American denied Mr. Riedl's claim, stating that he was not "totally disabled" under the insurance plan. Mr. Riedl unsuccessfully appealed General American's decision. Meanwhile, he continued to see numerous doctors and to submit to a myriad of medical tests in an attempt to find a specific diagnosis for his condition. Doctors have been unable to diagnose specifically the source of Mr. Riedl's pain. On January 20, 1997, Dr. Zwibelman, who was then Mr. Riedl's treating physician, wrote a letter to Mr. Riedl's attorney expressing his medical opinion that Mr. Riedl was unable to work at any job because of his chronic chest pain. In April of 1998, an Administrative Law Judge for the Social Security Administration determined that Mr. Riedl was permanently and totally disabled, and approved his receipt of Social Security benefits dating back to April 18, 1995.

Mr. Riedl filed this action under 29 U.S.C. § 1132(a)(1)(B), claiming an entitlement to benefits under Phillips's plan and attorneys' fees under 29 U.S.C. § 1132(g). Both parties filed motions for summary judgment. Relying on Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the District Court reviewed de novo the administrator's denial of benefits, and granted summary judgment and attorneys' fees in favor of Mr. Riedl. The Court held that the record clearly established that Mr. Riedl was unable, during the relevant time period, to perform his duties as shift foreman, and that he was also unable to perform any other reasonable occupation available at Phillips. This appeal followed.

II.

A.

As an initial matter, we must address whether the District Court applied the appropriate standard of review. We review de novo a district court's determination of the appropriate standard of review. Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 587 (8th Cir. 1999). It is undisputed that Phillips's long-term disability plan does not give the plan's administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. However, General American asserts that Bruch does not apply here. Bruch held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. According to General American, Bruch is limited to plan interpretations and does not extend to fact-based determinations. Therefore, argues General American, since the administrator's decision was a fact-based determination and not a plan interpretation, the District Court should have reviewed the administrator's denial of benefits for an abuse of discretion only.

We think General American construes Bruch too narrowly and urges upon us a difference that should not be controlling. Bruch instructs a district court to review eligibility determinations de novo absent the appropriate discretionary language in the governing plan. Id. Often an employee's eligibility for benefits under a plan depends both on an administrator's determination of certain facts, and on the application of those facts to the terms of the plan. To rule that an administrator's fact-based determinations should be reviewed for an abuse of discretion, even though the plan lacks the appropriate discretionary language, does not give sufficient effect to Bruch's holding. We hold that, absent language in the plan granting discretionary authority to the

-4-

administrator to determine eligibility for benefits or to construe the terms of the plan, fact-based determinations should receive de novo review.[2]

B.

Next, we address whether the District Court erred in granting summary judgment to Mr. Riedl and denying summary judgment to General American. We review de novo a district court's grant of summary judgment. Hawkeye Nat'l Life Ins. Co. v. AVIS Indus. Corp., 122 F.3d 490, 496 (8th Cir. 1997).

> A court considering a motion for summary judgment must view all facts in the light most favorable to the non-moving party and give to the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. [citation omitted]  While a party is entitled to summary judgment if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law," . . . summary judgment is inappropriate when the

---

[2]We note disagreement among our sister circuits. *Compare* Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 250-51 (2d Cir. 1999) (holding de novo review applies to plan administrator's fact-based determination in absence of plan language granting discretionary authority); Rowan v. Unum Life Ins. Co. of America, 119 F.3d 433, 435 (6th Cir. 1998) (same); Ramsey v. Hercules, Inc., 77 F.3d 199, 204 (7th Cir. 1996) (same); Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1183 (3d Cir. 1991) (same); Reinking v. Philadelphia American Life Ins. Co., 910 F.2d 1210, 1213-14 (4th Cir. 1990) (same), *overruled on other grounds by* Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017 (4th Cir.1993), *with* Pierre v. Connecticut General Life Ins. Co., 932 F.2d 1552, 1562 (5th Cir.), cert. denied, 502 U.S. 973 (1991) (administrator's factual determinations receive deferential review despite absence of plan language conferring discretionary authority). We noted this issue but did not definitively resolve it in Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir. 1992).

record permits reasonable minds to draw conflicting inferences about a material fact.

Donaho v. FMC Corp., 74 F.3d 894, 897-98 (8th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)); see Fed. R. Civ. P. 56(c).

On summary judgment, the issue is whether, as a matter of law, Mr. Riedl was totally disabled under Phillips's plan.  The relevant provisions of the plan are:

Section 8.  DEFINITION OF QUALIFYING PERIOD:

(A)    As used herein, the term "Qualifying Period" means a period of six months of Total Disability, beginning while insured, during any one period of disability . . ..

Section 10.  DEFINITION OF TOTAL DISABILITY.  An Employee who is under the care of a licensed physician shall be considered totally disabled if:

(A)    During the Qualifying Period and the first 24 months during which the Employee is eligible for benefits, he will be considered totally disabled if due to injury, sickness, or pregnancy, he is unable to work at his regular job or at a reasonable occupation which is available with the Employer.

(B)    Thereafter the Employee will be deemed totally disabled if, due to injury, sickness or pregnancy, he is unable to work at any gainful occupation for which he is or may become fitted.

General American argues that Mr. Riedl was not totally disabled either because he was, within the initial 30 months, able to work at his own job or at a reasonable occupation available with Phillips, or because he is currently able to work at some

gainful occupation for which he is or may become fitted. In support of this claim, General American points to the following: (1) Mr. Riedl's cardiologist, Dr. Martinez-Arraras, released him to work on September 18, 1995, without any restrictions; (2) Mr. Riedl told General American he could return to work; (3) Mr. Riedl stopped working at Phillips not because of his alleged chronic chest pain but because he accepted an early-retirement severance package; (4) at no point during the six-month Qualifying Period did any of Mr. Riedl's attending physicians opine that he was unable to perform *any* job at Phillips; and, (5) after numerous medical tests there is no objective medical evidence to support Mr. Riedl's claims of chest pain.

Mr. Riedl argues that the evidence in the record sufficiently establishes that he was totally disabled under the plan as a matter of law. Mr. Riedl points to the voluminous medical record chronicling visits to more than 15 different doctors, extensive medical testing, and various medications. None of the doctors seemed to doubt the extreme pain, insomnia, exhaustion, and depression asserted by Mr. Riedl. He also argues that his job as shift foreman was physically and emotionally demanding, requiring him to be on call 24 hours a day, seven days a week. Mr. Riedl points to the medical opinions of Drs. Miguel, Martinez-Arraras, and Zwibelman stating that he was totally disabled from his job. Furthermore, Riedl cites as persuasive the determination by the Social Security Administration that he has been unable to perform any gainful employment since April 18, 1995.

After a careful review of the record, we cannot wholly agree with either side. The plan states,

> During the Qualifying Period [a period of six months of Total Disability, beginning while insured] and the first 24 months during which the Employee is eligible for benefits, he will be considered totally disabled if due to injury, sickness, or pregnancy, he is unable to work at his regular

job or at a reasonable occupation which is available with the Employer.

In order to succeed on summary judgment, General American must show one of three things as a matter of law: (1) that at some point between April 19, 1995, and November 18, 1995 (the day he applied for benefits), Mr. Riedl was capable of performing either his own job or another reasonable occupation available within Phillips; or (2) that within the following 24 months he was capable of performing either his own job or another reasonable occupation available within Phillips; or (3) that he is currently able to work at some gainful occupation for which he is or may become fitted. Likewise, to succeed on summary judgment Mr. Riedl must show that, as a matter of law, during the Qualifying Period and the next 24 months, he was not capable of performing his job or any other reasonable occupation available within Phillips, and that he is presently unable to work at any gainful occupation for which he is or may become fitted. Because there are reasonable inferences either way as to whether Mr. Riedl was totally disabled under the plan, neither party can prevail without some findings of fact.

General American concedes that the record is inconsistent as to the nature of Mr. Riedl's job as shift foreman. In September of 1995, Mr. Riedl informed Phillips's doctor that his job was mostly office work. However, there is evidence in the record that the shift foreman spends half of his time in the plant checking machines and supervising employees, that he is exposed to extreme weather conditions, significant emotional stress, and plant hazards, and that he is on call 24 hours a day.

It is undisputed that Dr. Martinez-Arraras released Mr. Riedl to return to his job as shift foreman in September without any restrictions. Also during the Qualifying Period, Dr. Martinez-Arraras completed an Attending Physician's Statements of Disability form which stated that Mr. Riedl was not totally disabled from his own job

or from any other work. It is also undisputed that Mr. Riedl communicated to Phillips his ability to return to work, and that he was feeling better. Moreover, a doctor for Phillips approved, with some restrictions, Mr. Riedl's return to work.[3]

In addition, in December of 1995, outside the Qualifying Period but within the subsequent 24 months, Drs. Martinez-Arraras and Miguel completed Attending Physician's Statements of Disability forms which stated that Mr. Riedl was totally disabled from his own job, but which also specifically stated that he was not totally disabled from other work.

However, the doctors examining Mr. Riedl after the Qualifying Period noted varying levels of physical and mental impairment. Dr. Rohaidy's Attending Physician's Statement of Disability form, completed on November 20, 1995, stated that Mr. Riedl suffered a "[m]oderate limitation of functional capacity capable of clerical/administrative (sedentary) activity (60-70%)," and that he was "unable to engage in stress situations or engage in only limited interpersonal relations (moderate limitations)." Dr. Miguel's statement, completed in December of 1995, claimed Mr. Riedl suffered "slight limitations of functional capacity, capable of light work (35-85%)" and he was "unable to engage in stress situations or engage in only limited interpersonal relations." Dr. Martinez-Arraras's statement, made four days after Dr. Miguel's, opined that Mr. Riedl suffered "severe limitations of functional capacity incapable of minimum (sedentary) activity (75-100%)" and he "has significant loss of psychological, physiological, personal and social adjustment (severe limitations)."

---

[3]It is unclear from the record whether General American intended to return Mr. Riedl to his job as shift foreman. General American claims it planned to accommodate Mr. Riedl's restrictions, but we do not know what the accommodation would have been.

Doctor Zwibelman, who saw Mr. Riedl in January of 1997, stated that "[f]ollowing the stent [in August of 1995], [Mr. Riedl] has experienced a squeezing chest pain which has been debilitating. . . . Because of this pain he has become completely disabled. . . . It does not sound as if he can return to his prior line of work, and it is doubtful that he can do any work unless his pain is to improve." Likewise, in April of 1998, an Administrative Law Judge determined that Mr. Riedl had been unable to perform any gainful employment since April 18, 1995. From this finding and from some of the doctors' opinions, a reasonable fact-finder might infer that the plaintiff had been continuously disabled ever since April 18, 1995.

Thus, there is no clear and undisputed evidence as to whether during the six-month Qualifying Period, or in the following 24 months, Mr. Riedl was able to work for Phillips as shift foreman or in any reasonable occupation available to Phillips. Dr. Martinez-Arraras's statements as to whether or not Mr. Riedl was totally disabled from his own job are inconsistent, although given within only a few months of each other. There is also conflicting evidence as to the nature of the shift foreman's general duties. Likewise, because Phillips intended to accommodate Mr. Riedl, it is uncertain what duties he would have actually had to perform. Moreover, each of Mr. Riedl's doctors opined different levels of physical and mental impairment; thus, it is uncertain to what extent Mr. Riedl was impaired and what effect such impairments might have had on his ability to perform his job or any other position, even with accommodation.

General American offers no affirmative evidence that Mr. Riedl is currently able to work at any gainful occupation for which he is or may become fitted. On the contrary, Dr. Zwibelman's letter opined that Mr. Riedl was, at least in 1997, unable to maintain any job due to his chronic pain which began in August of 1995. Similarly, the

ALJ determined that Mr. Riedl is currently totally disabled and unable to maintain any gainful employment.[4]

Consequently, the record does not establish, as a matter of law, that Mr. Riedl was capable of performing his job, or that he was capable of performing any reasonable occupation available to Phillips, or that he is currently able to work at any gainful occupation for which he is or may become fitted. Neither does the record, as a matter of law, establish the reverse. We think a fact-finder could reasonably draw certain inferences about Mr. Riedl's physical ability from the evidence, but such an exercise would be improper on summary judgment. Even where the historical facts are unchallenged, summary judgment is not appropriate if the facts are subject to more than one reasonable interpretation. St. Louis County Bank v. United States, 674 F.2d 1207, 1211 (8th Cir. 1982). Because the evidence in the record would support a reasonable fact-finder's decision for either party, the issue of whether Mr. Riedl was totally disabled is a genuine issue of material fact and renders summary judgment improper as to both parties. See In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation, 113 F.3d 1484, 1492 (8th Cir. 1997) (holding "[a] genuine issue of material fact exists if the evidence is sufficient to allow a reasonable [finder of fact] to return a verdict for the nonmoving party.")

## III.

Therefore, we affirm the District Court's denial of summary judgment with respect to General American and reverse the District Court's grant of summary

---

[4]Although the Social Security Administration's determination is not binding, it is admissible evidence to support an ERISA claim for long-term disability benefits. Duffie v. Deere & Co., 111 F.3d 70, 74 n.5 (8th Cir. 1997).

judgment in favor of Mr. Riedl.[5]    We remand this case to the District Court for proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Since we hold that there is an issue of fact concerning whether Mr. Riedl was totally disabled, we do not reach the other issues advanced by the parties.