259 F.Supp.2d 911 (2003)
Martha J. CROSSWHITE, Plaintiff,
v.
RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.
No. 2:01 CV 114 DDN.
United States District Court, E.D. Missouri, Northern Division.
January 24, 2003.
*913 Rex V. Gump, Sidney E. Whellan, Tatlow and Gump, Moberly, MO, for plaintiff.
Bryan M. Groh, Evans and Dixon, St. Louis, MO, Terese A. Drew, Hinshaw and Culbertson, St. Louis, MO, Michael A. Lawder, Hinshaw and Culbertson, Belleville, IL, Joshua Bachrach, Rawle and Henderson Philadelphia, PA, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court upon the motion of defendant Reliance Standard Life Insurance Company (Reliance Standard) for summary judgment. (Doc. 33.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(e). A hearing was held on December 18, 2002. Defendant's motion is granted.

BACKGROUND
In November 2001, plaintiff Martha J. Crosswhite commenced this action in Missouri state circuit court against defendant Reliance Standard, alleging that defendant issued a life insurance policy to her spouse, Charles M. Crosswhite, who died of injuries from a vehicle collision, and that defendant refuses to pay her the proceeds. (Doc. 1 Ex. A.) After defendant removed the action to this court under various statutes, including 29 U.S.C. § 1132(e) (Employee Retirement Income Security Act of 1974 (ERISA) preemption), plaintiff challenged the court's subject matter jurisdiction, but the court denied her motion to remand. (Docs.1, 29, 35.)
Defendant now seeks summary judgment, arguing that plaintiff did not demonstrate entitlement to benefits (Doc. 33 Def.'s Mem. in Supp. of Mot. at 7), and attaches exhibits, which relate the following. Defendant issued a group accident policy to Central BanCompany for the benefit of Mr. Crosswhite. A "loss," as defined by the policy, "must result directly and independently from injury, with no other contributing cause (except bacterial infections)." "Injury" is defined, in relevant part, as "accidental bodily injury to an Insured which is caused directly and independently of all other causes by accidental means." The policy also has exclusions; one exclusion precludes coverage for any loss "to which sickness, disease, or myocardial infarction ... is a contributing factor." (Doc. 33 Def.'s Mot. Attach, at 3, 8,19, 26.)
On November 2, 1999, Mr. Crosswhite was involved in a one-car collision. He died later that day. On November 24, plaintiff provided defendant a proof of death application for accidental death insurance, a death certificate, an enrollment card plaintiff had signed, and a police accident report. According to the police report, the collision occurred on a clear, dry day and on a level, straight road. The reporting officer summarized what three witnesses had told him. Witness # 1 stated that the driver, Mr. Crosswhite, appeared slumped over and acting like something was wrong and that he was driving against the curb before going off the road and striking a street sign and a pole. Witness # 2 stated that the vehicle started bouncing off curbs then drove off the road. Witness # 3 added that the driver had appeared slumped over as though he was sick. The report listed "[p]hysical impairment" as a probable contributing circumstance. (Id. at 104-11.)
*914 The death certificate, signed by Roger L. Bautista, M.D., lists the immediate cause of death as cerebrovascular accident (a stroke), and describes the approximate interval between onset and death as acute. It also lists "motor vehicle accident" as another significant condition contributing to death but not resulting in the underlying cause of death. The certificate has several boxes that may be checked off under the heading "manner of death," including "Natural," "Accident," and "Could not be Determined." "Natural" was the only one of those boxes checked. The certificate also indicates that no autopsy was performed. In response to defendant's inquiring why an autopsy was not performed and whether the cause of death or diagnosis warranted an autopsy, Dr. Bautista wrote, "[a]t the time of death, the diagnosis was clear and there was no reason to perform an autopsy." (Id. at 49-50, 106.)
In January 2000, defendant, having previously received authorization from plaintiff to obtain Mr. Crosswhite's medical records, requested such records from Dr. William Winkelmeyer, Mr. Crosswhite's treating physician prior to the collision. The records Dr. Winkelmeyer provided reveal that Mr. Crosswhite had a history of epilepsy and hypertension (high blood pressure). The report from Dr. Winkelmeyer's last examination, conducted on October 29, 1999, stated that Mr. Crosswhite seemed somewhat frail, with extremity tremors, but that he had not had further seizures. The doctor's "impression" of Mr. Crosswhite's condition was epilepsy and hypertension. (Id. at 66-71.)
Defendant also requested Mr. Crosswhite's records from Moberly Regional Medical Center (MRMC), the facility to which Mr. Crosswhite was taken after the crash. These records, signed by Dr. Bautista, state that, when Mr. Crosswhite was brought to the emergency room he was responsive, but he gradually worsened and became unresponsive; initially one pupil was dilated, then both; a CT scan of his head showed no evidence of hematoma (blood clot) or infarct[1]; he had a fractured mandible and two fractured ribs; his head had no gross bony deformities; and his neck was not swollen. Dr. Bautista's tentative diagnosis was severe hypotension (low blood pressure); motor vehicle accident with a possibility of cerebrovascular accident or severe hypotension (with cause to be determined); fractured mandible; and fractured ribs. Unfortunately, Mr. Crosswhite's breathing worsened. He was intubated and died that day. (Id. at 88-92.)
On June 30, 2000, defendant wrote that it was denying the claim because no documentation had been presented confirming that Mr. Crosswhite sustained accidental bodily injuries in the crash that caused his death, independent of all other causes. The letter stated, "[i]t is clear from Mr. Crosswhite's medical history and the medical records received during our investigation, that Mr. Crosswhite suffered a medical event (cerebrovascular accident) while driving the vehicle which ultimately caused his death." Moreover, defendant determined the death was "due to a sickness condition and was not caused directly and independently of all other causes by accidental bodily injury." Defendant informed plaintiff that under ERISA she could request a review of the denial and informed her that a review request must state why her claim should not have been denied. *915 She was also told to include supporting documentation. (Id. at 42-44.)
After receiving the June 30 letter, plaintiff, through counsel, revoked the previous authorization that had allowed defendant access to Mr. Crosswhite's medical records; she also informed defendant, "[w]e will be gathering medical records and other pertinent documents relating to Mr. Crosswhite's injuries and any supplemental reports and will provide the same to you under separate cover." She requested an appeal of the decision. Before defendant's quality review unit upheld the decision, however, defendant sent two letters to plaintiffs counsel, inviting the submission of new or additional information.[2] (Id. at 29-33, 37.)
Plaintiff divides her response to the summary judgment motion into the three categories. First, she concludes that Missouri law governs her right of recovery. In reaching that conclusion, she largely repeats the arguments made in her previous remand motion regarding ERISA's preemption, savings, and deemer clauses. Second, in a category about proximate cause, she argues that, if an accident sets in motion agencies that result in death, such injury is regarded as the sole, proximate cause of death even though the injured person may have been suffering from a physical infirmity or disease, citing Mut. Benefit Health & Accident Ass'n v. Francis, 148 F.2d 590 (8th Cir.1945). She also argues that a pre-existing condition, if only a remote and predisposing cause of death, does not preclude recovery of accidental death benefits, citing Brock v. Firemens Fund of Am. Ins. Co., 637 S.W.2d 824 (Mo.Ct.App.1982). Finally, she argues that substantial medical evidence proves that Mr. Crosswhite did not have a cerebrovascular accident prior to the crash, but that the crash caused substantial injuries and resulted in his death. (Doc. 33 PL's Resp. at 3-8.)
In support, she attaches some of the same documents defendant attached to its summary judgment motion (the insurance policy, accident report, and death certificate), as well as (1) a reporting form from the ambulance company that brought Mr. Crosswhite to the MRMC,[3] (2) extensive medical records from the MRMC, including what appear to be CT scan results, and (3) an affidavit from Dr. Bautista. (Id. Exs. 2, 4-5.) In the affidavit, which was notarized in 2002,[4] Dr. Bautista opines that Mr. Crosswhite's rib, mandible, and neck injuries were caused by the crash; that a severe blow to the neck can result in cerebrovascular accident or stroke when plaque from a person's arteries breaks loose from the vessels in the neck and travels to the brain; that the CT scan performed indicated swelling in the neck severe enough to deviate the endotracheal tube and that such swelling was most likely caused by the severe blow to his neck during the collision; that the CT scan did not show a major bleed in the brain, which indicates there was no major cerebrovascular accident prior to admission; that dilated and fixed pupils are usually associated with a severe head injury and are not usually consistent with a cerebrovascular accident; and that severe hypotension is causally related to an injury and is inconsistent with a cerebrovascular accident. Mr. Crosswhite did not suffer a major stroke before the crash, concludes Dr. *916 Bautista, but rather a cerebrovascular accident caused by the blow to his neck. (Id. Ex. 2.)
Defendant replies that ERISA preempts plaintiffs claim. In addition, defendant states that (1) Francis predated ERISA by approximately thirty years; (2) the legal rule set forth in Brock conflicts with ERISA and must be preempted; (3) the instant case's facts are identical to those in QuesTech, Inc. v. Hartford Accident & Indem. Co., 713 F.Supp. 956 (E.D.Va. 1989), an ERISA case upholding the denial of benefits where a car went of the road and crashed after the driver had a heart attack; and (4) the court should not consider exhibits upon which plaintiffs response brief relies, such as various medical records and Dr. Bautista's affidavit, because they were not part of the administrative record considered by defendant, plaintiff has not argued that good cause to supplement the administrative record exists, and good cause to do so does not exist. (Doc. 33 PL's Reply.)
In a brief filed with the court's permission following the December 18, 2002 hearing, plaintiff argues that the court's review is not limited to evidence previously presented to and considered by the plan administrator, citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017 (4th Cir.1993) (en banc), and Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir.1991). (Doc. 41 at 3-4.) She concedes that the policy at issue addresses the cause of the "loss," but maintains that it does not address the "cause of the accident" or state that the accident must not be caused by sickness, disease, or bodily infirmity. Citing Vickers v. Boston Mut. Life Ins. Co., Nos. 94-11242, 94-40094, 1997 WL 112372 (D.Mass. Jan.22, 1997), affd, 135 F.3d 179 (1st Cir.1998), she urges that, under a common sense interpretation of the policy comporting with the policyholders' reasonable expectations, the loss is covered if it resulted exclusively from bodily injuries caused by an accident, regardless of the accident's cause. (Id. at 7-11.)

DISCUSSION

1. Standard of review
Defendant correctly concedes in its memorandum in support of the summary judgment motion that, because the policy at issue does not provide it an explicit grant of discretionary authority, the denial-of-benefits decision is to be reviewed de novo by this court. See Riedl v. Gen. Am. Life Ins. Co., 248 F.3d 753, 756 (8th Cir. 2001).
Summary judgment is proper in a civil case only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, All U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is not enough that there are factual disputes between the parties; the disputes must be outcome determinative under prevailing law. See Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir.), cert, denied, 522 U.S. 816, 118 S.Ct. 64,139 L.Ed.2d 26 (1997).

2. Scope of review
Before determining whether defendant's decision to deny benefits was correct, the court must determine the scope of review, specifically, whether to consider the exhibits plaintiff submitted in response to defendant's motion that were not part of the administrative record. "Admission of evidence outside the administrative record is discouraged on de novo review; however, the district court may admit evidence outside the record in a denial of ERISA benefits case if the participant shows good cause." Ferrari v. *917 Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir.2002); see also Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir.1992) (discussing factors relevant to a showing of good cause). The reasons for requiring good cause are twofold: "to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir.1993).
In Ferrari, the Eighth Circuit found ample evidence in the record to uphold the district court's decision not to expand the administrative record: (1) the defendant had notified the plaintiff that the evidence he submitted was inadequate; (2) the plaintiffs refusal to authorize the collection of certain information thwarted the defendant's efforts; and (3) the plaintiff offered no reasonable explanation for his failure to provide the defendant with the requested information. See 278 F.3d at 807.
In the case at bar, the court will not consider the exhibits plaintiff submitted for the first time in federal court. The most significant of these exhibits is Dr. Bautista's affidavit, which was created well after the plaintiff commenced this action. See Davidson, 953 F.2d at 1095 (additional evidence, created after litigation had begun, was known or should have been known to Davidson during the administrative proceedings). Despite the initial denial-of-benefits letter and two subsequent letters inviting plaintiff to submit additional documents for the administrative appeal, she did not provide further documents. Defendant's ability to obtain further medical records was hindered when plaintiff revoked her prior authorization; there is no evidence that she followed through with her letter informing defendant that she would provide it with such records. Further, Dr. Bautista's affidavit states that the CT scan (which was not among the medical records defendant had before it when making its decision) indicated severe neck swelling. Such information about neck swelling, however, conflicts with the medical records defendant had before it when making its decision. Plaintiff has not explained why the affidavit and CT scan were not submitted to defendant while defendant was reviewing plaintiffs claim, but instead faults defendant for not obtaining the CT scan prior to plaintiffs consent revocation.
Moreover, the two out-of-circuit cases on which plaintiff relies, Quesinberry and Luby, do not warrant the court's consideration of the additional evidence. These cases are not particularly helpful to plaintiff, given that defendant had previously invited her to submit additional evidence and that the evidence before defendant was sufficient to render a decision. See Quesinberry, 987 F.2d at 1027 (in determining whether to grant a motion to introduce evidence not presented to the ERISA plan administrator, the court should address why the evidence proffered was not submitted to the plan administrator and, if administrative procedures did not allow for or permit the introduction of the evidence, admission in the district court may be warranted); Luby, 944 F.2d at 1185 ("Admitting evidence not considered by the plan administrator is crucial in cases, such as this, where there is no evidentiary record to review" (emphasis added).); cf. Weber v. St. Louis Univ., 6 F.3d 558, 561 (8th Cir.1993) (the trial court abused its discretion by refusing to receive additional evidence on the question of the onset date of plaintiffs disability, because the only materials in evidence as to the date were insufficient to sustain a verdict for either party on the basis of anything except speculation).

3. Import of Missouri law
Despite plaintiffs arguments to the contrary, ERISA is to be applied to this case, *918 as set forth in the order denying plaintiffs motion to remand to state court. The rules of decision set forth in Francis and Brock are not applicable in this action.
In Francis, a case involving Missouri law and an accidental-death insurance policy, the court stated that "[a]n injury which causes the death of a person in impaired health or suffering from disease is the cause of his death even though he would not have died if his health had not been impaired." 148 F.2d at 594. Francis, however, does not control. It was a diversity action and was decided in 1945, long before ERISA was enacted. In Brock, also not an ERISA case, the Missouri Court of Appeals held that "[a] preexisting condition, if only a remote and predisposing cause of death, does not preclude recovery of accidental death benefits... even if the governing policy specifically requires death be caused by an accidental injury `directly and independently of all other causes.'" 637 S.W.2d at 826-27. The state court admittedly gave the policy term a meaning in law different than it had "in common parlance." Id. at 827. The Brock rule conflicts with ERISA's requirement that terms "be accorded their ordinary, and not specialized, meanings." See Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 154 (8th Cir.1990), cert, denied, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). Moreover, in interpreting ERISA plans, a federal court "must construe each provision consistently with the others and as part of an integrated whole so as to render none of them nugatory and to avoid illusory promises." Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir.1996); see also S. Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 103 (5th Cir.1993) ("A court should not interpret a policy to leave specific provisions without meaning or effect").

4. Reliance Standard's decision to deny benefits
Plaintiffs claim is governed by § 1132(a)(1)(B) of ERISA. This section allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As defendant notes, a plaintiff suing under ERISA generally bears the burden of proving entitlement to contractual benefits. See Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir.1998) (per curiam); Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.1992). However, Horton also states, "if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage." 141 F.3d at 1040 (citing Farley, 979 F.2d at 658). Thus, defendant bears the burden of proving that "sickness, disease, or myocardial infarction" was a contributing factor.
Defendant's evidence satisfies the necessary burden. As discussed in greater detail above, this evidence includes the police report's uncontradicted summary of three witnesses' accounts, i.e., that Mr. Crosswhite was slumped over and driving into the curb before the final impact; the death certificate, which lists cerebrovascular accident as the cause of death, indicates that "motor vehicle accident" contributed to but did not result in the underlying cause of death, and categorizes the manner of death as natural; Dr. Bautista's letter stating that the diagnosis was clear and there was no reason to perform an autopsy; and the records showing Mr. Crosswhite's prior medical history of epilepsy.
Further, in a significant way this case's facts are distinguishable from those described *919 in Vickers, 1997 WL 112372. In Vickers, the insurance company defendants conceded that the sole physiological cause of the insured's death was the trauma he suffered as a result of the vehicular collision and that his medical event, which caused the accident, would not have been fatal. Id. at *3. The opposite is true here: the evidence available to Reliance Standard when it reached its decision was that Mr. Crosswhite's stroke, which began while he was driving, proved fatal, and that the collision, while a condition contributing to the death, did not result in the underlying cause of death. Vickers claimed that case law from many jurisdictions supported the view that the language in question provided coverage where the sickness, disease, or bodily infirmity caused the accident but was not a concurring, physiological cause of death, id. at *5; however, the evidence establishes that the stroke caused Mr. Crosswhite's death.
For these reasons, the motion of defendant for summary judgment (Doc. 33) is granted. An appropriate order is issued herewith.

FINAL ORDER
In accordance with the Memorandum issued herewith,
IT IS HEREBY ORDERED that the motion for summary judgment filed by defendant Reliance Standard Life Insurance Company (Doc. 33) is granted. This action is dismissed with prejudice.
NOTES
[1] An infarct is "an area of necrosis resulting from a sudden insufficiency of arterial or venous blood supply." STEDMAN'S MEDICAL DICTIONARY 779 (25th ed.1990). Necrosis is the "death of one or more cells, or a portion of tissue or organ, resulting from irreversible damage." Id. at 1026.
[2] Defendant states in the summary judgment motion that plaintiff did not provide any additional documentation. Plaintiff does not contest this statement.
[3] The lightly copied ambulance reporting form provided to the court is quite difficult to read. (Doc. 33 PL's Resp. Ex. 5.)
[4] The affidavit bears two dates: October 7 and November 7, 2002. (Id. Ex. 2.)