Cecile E. VICKERS, Individually and as Executrix of the Estate of Charles E. Vickers, Jr., Plaintiff, Appellee,

v.

BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant, Appellant.

No. 97–1949.

United States Court of Appeals, First Circuit.

Heard Dec. 2, 1997.

Decided Feb. 2, 1998.

Ralph C. Copeland with whom Copeland & Hession was on brief for appellant.

John A. Mavricos with whom Christopher, Hays, Wojcik & Mavricos was on brief for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and LYNCH, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

In August, 1992, Charles E. Vickers, Jr., (Vickers), an employee insured under an ERISA, 29 U.S.C. §§ 1001 et seq., group policy covering, within limits, accidental death, was fatally injured in a one-car auto-

mobile crash in Arizona. Plaintiff executrix sued in the United States District Court for the District of Massachusetts and was awarded the death benefit and attorney's fees on a motion for summary judgment. Defendant Boston Mutual Life Insurance Company (Company), claiming the death was not covered by the policy, appeals. We affirm.

### The Facts

Vickers, a 55 year old male, was driving alone when his car went off the road on a curve, vaulted over a 15 foot drop, and struck a tree with great force. He died within a half hour. The Arizona Medical Examiner performed an autopsy the following day and listed a number of diagnoses, including "coronary arteriosclerosis, occlusive, severe," and much physical trauma. He gave as the "Cause of Death:"

> Multiple blunt force traumatic injuries secondary to motor vehicle accident precipitated by acute coronary insufficiency.

For "Manner of Death," choosing between "Natural" and "Accident," he chose "Accident." Whether this was an accident within the policy terms, however, depends upon the policy terms. The undisputed facts are that the crash was caused by Vicker's heart attack, but the sole physiological cause of death was the physical injury sustained in the crash. The heart attack alone would not have been fatal.

We quote from the policy terms.

### THE POLICY

We agree to pay benefits for loss from bodily injuries:

a) caused by an accident . . .; and

b) which, directly and from no other causes, result in a covered loss.

We will not pay benefits if the loss was caused by:

a) sickness, disease, or bodily infirmity; or

b) any of the Exclusions listed on Page (sic) 2–3.

. . . .

### THIS IS A LIMITED ACCIDENT POLICY

### WHICH DOES NOT PAY BENEFITS FOR LOSS FROM SICKNESS

. . . .

### EXCLUSIONS

No benefit will be paid for loss resulting from:

. . . .

6. Sickness, disease or bodily infirmity.

The basic arguments are these: Plaintiff says the policy pays for "loss," viz., death, from bodily injuries that were caused by an accident, and the exclusion does not apply because the heart attack caused the accident rather than the death. The Company says the crash was not an accident, and that even if it was, the bodily injuries that caused the loss resulted from an accident caused by the heart attack, so that the basic cause of the loss was the diseased heart.

■ We can easily dispose of the Company's first argument. In its view, and relying on *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990), the crash was not an "accident," as "a reasonable person in the decedent's shoes should have foreseen that if one suffers a heart attack while driving and becomes unconscious, loss of control of the vehicle is inevitable and would likely result in serious bodily injury and possibly death." Perhaps, but some subjective expectation of a heart attack would be required, and there was none here. The Company's argument that there was no accident is patently frivolous.

■ Otherwise, to a degree, overlooking legal precedents, we can understand both parties. Surely Vickers' family thinks of him as having been killed in an automobile accident. But the Company says, on plaintiff's theory, what is the point of the two policy provisions denying coverage for and excluding loss "caused by" and "resulting from"

"disease or bodily infirmity"? There was no need for those disclaimers in an accident policy unless there was contemplated a disease-connected accident to begin with. Manifestly there would have been no accident and no loss here, were it not for the insured's diseased heart.

On reflection, as a matter of pure logic, quite possibly this issue could be answered in the Company's favor. But, if so, this raises another question. Why did the Company write a policy that called for the services of a logician instead of relying on "plain meanings . . . which comport with the interpretations given by the average person"? *Wickman,* 908 F.2d at 1084. We suggest two reasons. (1) Inefficiency; poor, ill-informed, draftsmanship. (2) A well-advised drafter, persuaded by the sales-department to simplify and not use intimidating language.[1] Neither reflect well on the Company.

### The Law

■ We held in *Wickman* that the terms of an ERISA policy are to be interpreted under principles of federal substantive law. 908 F.2d at 1084; *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). In view of the still "formative stage" of federal law here we apply "common-sense canons of contract interpretation" and borrow the "best reasoned" concepts from state law. 908 F.2d at 1084. If this Massachusetts insurer's draftsman had looked to Massachusetts law, he should have found the following:

In *Bohaker v. Travelers' Insurance Co.,* 215 Mass. 32, 102 N.E. 342 (1913), the insured, delirious from typhoid fever, was temporarily left alone in an upstairs bedroom. He was thereafter found, fatally injured, on the ground outside an open window. The policy insured against "bodily injuries, effected *directly or independently of all other causes,* through external, violent and acciden-

tal means." *Id.* at 32, 102 N.E. 342 (emphasis added). The court said,

A sick man may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease.

*Id.* at 34, 102 N.E. 342. The court held for the insured. To look at common understanding is a fundamental principle.

In *Vahey v. John Hancock Mutual Life Insurance Co.,* 355 Mass. 421, 245 N.E.2d 251 (1969), the insured, while walking on the street, had a major epileptic seizure, causing him to fall to the pavement, striking his head. Death came from a fractured skull and cranial bleeding. The policy provided:

No benefit will be payable under the "Accidental Death Benefit" provision if the Insured's death results, *directly or indirectly,* or wholly or partially, from: (1) any infection or bodily or mental infirmity or disease existing before or commencing after the accidental injury . . . .

*Id.* at 422 n. 1, 245 N.E.2d 251 (emphasis added). The court held for the defendant. Thus two, more exactly, one little word.

Defendant would have it that "directly and from no other causes" is "not only analogous to *'indirect'* (sic) but is broader and more extensive." Our logician might agree. But why analogies? Why overlook *Bohaker,* and neglect *Vahey?* Defendant gains nothing by saying, broadly,

[P]roximate cause . . . focuses on the foreseeability between the event and the injury caused as a result of the event and does not require a direct connection.

. . . .

[T]he nexus between the heart attack and the bodily injuries suffered from the crash was immediate and should be viewed as

---

1. We can understand that sales agents might not like the policy wording in *Sekel v. Aetna Life Insurance Co.,* 704 F.2d 1335, 1336–37 (5th Cir. 1983) (applying Texas law and reversing an award to the insured),

The insurance provided under this Title does not include, and no payment shall be made for,

any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the following excluded risks, even though the proximate or precipitating cause of loss is accidental bodily injury: (a) bodily or mental infirmity; or (b) disease . . . .

one entire event even though the heart attack was not the physiological cause of the decedent's death.

This is no answer when we are interpreting the word "cause" in a layman's insurance policy.

### Attorney's Fees

We have gone to this length, in what would normally call for a short and routine affirmance, because defendant appeals from the court's awarding prejudgment interest and attorney's fees. We review this award for abuse of discretion. *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 223 (1st Cir.1996). This being a contract action, with liquidated damages, defendant cannot object to interest: it has had the use of promised money. *Cf. id.* at 224. As to fees, should defendant have known there was no merit in its defense? *See id.* at 225. Even now, as against the exhaustive list of opposing state cases cited in the diligent magistrate judge's opinion, not to mention the Massachusetts cases, defendant has found no case directly in its favor. We cannot fault the district court's award of attorney's fees under *Cottrill* as an abuse of discretion.

The $20,000 fee, which at, say, $200 an hour, comes to 100 hours, possibly suggests the standard contingency fee figure[2] rather than the actual time needfully spent. We approve it, but shall add nothing for the further briefing needed for this court.

*Affirmed, with double costs.*

---

2. The death benefit was $50,000.