**Frank A. GAY, Plaintiff,**

v.

**STONEBRIDGE LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 07–10276–NMG.**

United States District Court,
D. Massachusetts.

Nov. 3, 2008.

Kevin M. Hensley, Warren, Hensley & Bowen, LLP, Boston, MA, Lawrence Moniz, Law Office of Lawrence Moniz, Taunton, MA, for Plaintiff.

Robert P. LaHait, Fitzhugh & Mariani LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The dispute in this case arises out of three life insurance policies that the defendant, Stonebridge Life Insurance Company ("Stonebridge"), issued to Anita Gay ("decedent"), collectively providing $150,000 in coverage for bodily injury caused directly by an *accident* independent of all other causes. After decedent's death and Stonebridge's failure to pay certain claims, plaintiff Frank A. Gay ("Gay") brought suit as executor of her estate, which is the designated beneficiary under the policies. The parties contest whether the decedent died of an "accident", a prerequisite for payment of the claims, and have, therefore, filed cross-motions for summary judgment.

## I. *Background*

### A. Factual Background

On March 24, 2006, at age 64, the decedent fell and struck her head on the floor of the Lincoln Greyhound Park casino in Lincoln, Rhode Island. She was transported to a hospital and pronounced dead the following morning.

### B. Procedural History

On January 10, 2007, Gay filed a complaint in Bristol County Superior Court against Stonebridge alleging breach of contract and violation of M.G.L. c. 93A. After removing the case to federal court, Stonebridge filed an answer in which it has asserted several affirmative defenses: 1) failure to state a claim, 2) intervening acts of third parties, 3) failure to fulfill necessary conditions precedent under the contract of insurance and 4) failure to satisfy conditions precedent for the filing of a Chapter 93A suit. The cross-motions for summary judgment depend upon the determination of the decedent's cause of death.

Stonebridge argues that the decedent died of a stroke, i.e. not at as a result of an accidental injury covered under the policies. It claims that it did not, therefore, breach its insurance contract or violate Chapter 93A by failing to pay on the policies which did not cover the loss. It further argues that an insurer cannot be liable for bad faith in denying coverage so long as the denial was not unreasonable.

Gay responds that his decedent died of a traumatic skull fracture which amounted to an "accidental death". He further asserts that even if the decedent did suffer a stroke, the Stonebridge policies provide coverage because, even though the dece-

dent would not have fallen but for the stroke, the fall (an accident) itself was the cause of death. Gay argues that he is, therefore, entitled to payment of the claims and that Stonebridge violated Chapter 93A in denying them.

## II. *Legal Analysis*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Application

#### 1. Count 1: Breach of Contract

██ At issue in these summary judgment motions is whether the decedent's death was caused by an accident. If so, Stonebridge breached its obligations under decedent's policies by failing to pay the proceeds to Gay and must do so now; if not, this lawsuit must be dismissed.

██ Whether an injury is "accidental" is determined in accordance with the reasonable expectations of the insured. *Wickman v. Nw. Nat'l Ins. Co.,* 908 F.2d 1077, 1084, 1088 (1st Cir.1990). If the insured's actual expectations are unascertainable, the fact-finder must consider

> whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.

*Id.*

Stonebridge contends that the facts in this case show that the decedent died of a stroke, not an accident. It claims that the decedent told hospital personnel that she felt faint before collapsing at the casino. It proffers the deposition testimony of Dr. George Lauro ("Dr. Lauro"), a coroner who performed an autopsy on the decedent, as evidence that 1) the decedent had an enlarged heart, arteriosclerosis of the coronary vessels, arthereoscelerotic cardiovascular disease and a significant degree of hypertension, 2) the decedent died after suffering a cerebral hemorrhage (stroke) and 3) she collapsed to the floor thereby sustaining a fractured skull. Stonebridge presents the decedent's death

certificate which lists as the cause of death a "fractured skull with subdural and subarrachnoid hemorrahage following acute cerebral hemorrahage". In light of such evidence, Stonebridge asserts that the decedent's death was not caused by an accident *independent* of all other causes and that Gay offers no credible evidence to the contrary.

Although much of the evidence does suggest that the decedent died from a stroke, the Court will deny summary judgment on the breach of contract claim because Gay has proffered sufficient conflicting evidence to suggest that the decedent died from the fall (an accident). He argues that the hospital records do not corroborate that the decedent felt faint before collapsing in the casino. Furthermore, he notes that Dr. Lauro could not rule out the possibility that the decedent's head trauma was the result of a trip and fall rather than a stroke.

In addition, to rebut Dr. Lauro's evaluation, Gay has offered a letter from a board-certified neurologist, Dr. Matthew D. Gold ("Dr. Gold"). In his letter, Dr. Gold declares that Dr. Lauro is not a clinician and that his report fails to include enough pathological information from which to conclude that decedent suffered a cerebral hemorrhage prior to her head trauma. Indeed, Dr. Gold determined that

> there is no need to invoke a causative stroke to explain the unfortunate demise of [decedent] as the evidence is quite consistent with primary trauma from a trip and fall.

Stonebridge counters that Dr. Gold's letter is entirely speculative and does not lead to a conclusion, with the necessary degree of medical certainty, that the decedent's death was due to an accidental injury. It suggests that, on the other hand, Dr. Lauro's report bears indicia of trustworthiness as a hearsay exception under Fed.R.Evid. 803(6). The Court concludes that the weighing of such evidence is, more properly, left to a jury.

Gay also asserts that, even if the decedent is found to have died from a stroke, he is entitled to summary judgment. He relies on *Vickers v. Boston Mut. Life Ins. Co.*, 135 F.3d 179 (1st Cir.1998), in which the First Circuit Court of Appeals ordered an insurance company to pay on a policy covering injuries "caused by an accident . . . directly and from no other causes" after the insured driver suffered a heart attack and was killed in a contemporaneous car crash. The Court rejected the insurance company's argument that the insured's death was caused by the heart attack, not the car crash, and was, therefore, not covered under the policy. As the Court explained,

> A sick man may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease.

*Vickers*, 135 F.3d at 181, citing *Bohaker v. Travelers' Ins. Co.*, 215 Mass. 32, 102 N.E. 342, 344 (1913). Thus, Gay argues that even if decedent suffered a stroke which, in turn, caused her to fall and later die, she still died from an "accident" under the terms of the policy.

*Vickers*, however, is not entirely on point. There, the heart attack was determined to have been non-fatal by itself and the defendant conceded that the actual cause of death was the car crash. The same cannot be determined of the stroke in this case; a factual dispute remains as to what extent the stroke contributed to decedent's death and the defendant has not conceded that the fall was the actual cause of death. Thus, while in *Vickers* it

could be said that the car accident rather than the heart attack killed the insured, it cannot be confirmed in this case that the fall (not the stroke) killed the decedent. Disputed issues of material fact therefore remain in this case and entry of summary judgment is unwarranted.

## 2. Count 2: Violation of Chapter 93A

Each party devotes less than one page in their memoranda to the issue of the alleged Chapter 93A violation. Stonebridge argues that, where there is a "reasonably debatable question of policy interpretation", an insurer does not exhibit bad faith (in violation of Chapter 93A) merely by denying a claim, even if, in retrospect, it was in error. *See Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 671 N.E.2d 1243, 1244 (1996), *citing Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 545 N.E.2d 1156, 1160 (1989). Gay responds that denial of a legally valid claim can constitute a Chapter 93A violation. He cites M.G.L. c. 176D, § 3(9)(f) ("[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear") and § 3(9)(n) ("[f]ailing to provide promptly a reasonable explanation of the basis ... for denial of a claim") as both constituting unfair claim settlement practices.

At this time, there is insufficient information to determine whether Stonebridge's refusal to pay the claim was based on a reasonable interpretation of the policies. *See Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 448 N.E.2d 357, 360–62 (1983); *see also Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556, 750 N.E.2d 943, 949–952 (2001). The Court will, therefore, deny summary judgment on the Chapter 93A ground as well.

### ORDER

In accordance with the foregoing, the parties' cross-motions for summary judgment (Docket Nos. 10 and 13) are **DENIED**.

**So ordered.**