# United States Court of Appeals

## For the First Circuit

No. 10-1559

FRANK A. GAY, as Executor of the Estate of Anita Gay,
also known as Anita M. Gay,

Plaintiff, Appellant,

v.

STONEBRIDGE LIFE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard, Circuit Judge,
and DiClerico,* District Judge.

Kevin Hensley, with whom Warren, Hensley & Bowen LLP was on brief, for appellant.
Robert P. La Hait, with whom The McCormack Firm, LLC was on brief, for appellee.

October 26, 2011

*Of the District of New Hampshire, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>. Plaintiff-Appellant Frank A. Gay ("Gay") appeals from the denial of a new trial in this insurance coverage case. He argues that the district court erred when it permitted a defense expert witness to present testimony claimed to be beyond the scope of his expert report. There was a verdict for defendant, Stonebridge Life Insurance Company ("Stonebridge"). Gay's motion was denied by the district court, and on appeal he presents the same argument. After review, we affirm.

## I. Background

Gay is the brother of the late Anita Gay ("Anita") and executor of her estate. Her death occurred during a trip she took to a casino in Lincoln, Rhode Island. While at the casino, Anita fell. When medical personnel arrived to treat her, she was unconscious and appeared to have suffered a head injury from the fall. She was transported to a local hospital, but when her condition deteriorated she was transferred to Rhode Island Hospital in Providence. She died the next day.

The hospital records listed Anita's death as an accident, and stated that she died as the result of a nonsurvivable closed head injury that caused extensive bleeding in her brain. Her body was released to the Rhode Island Office of State Medical Examiners to determine a more precise cause of death. An autopsy was performed by George Lauro, M.D., a forensic pathologist with that office. The limited autopsy report that he prepared recorded the

-2-

cause of death as "fractured skull with subdural and subarachnoid hemorrhage following acute cerebral hemorrhage."[1] The death certificate prepared by Dr. Lauro reports the same cause of death. The autopsy report stated that Anita's manner of death was an "accident," from having "collapsed at race track."

Gay made a timely demand for payment of benefits under three insurance policies issued to Anita by Stonebridge. Gay sought to recover the amount due under the policies, plus payment for one day of hospitalization, for a total of $150,500. Each of the polices provided for payment only in the event of "accidental death which was a direct and independent cause of death." In the event of accidental death, the aggregate value of the policies totaled $150,000, plus an additional $500 for each day of hospitalization. Stonebridge denied the benefit based on its conclusion that Anita's death was not "accidental" within the meaning of the policies. It determined that the occurrence of a stroke -- which likely caused the fall -- pushed her claim outside the accidental death coverage of the policies.

Gay filed suit for breach of contract, arguing that Anita's death was accidental as documented by the hospital records and autopsy reports. Stonebridge countered that those records in fact demonstrated that Anita did not die from an accident, but that

---

[1]The parties agree that "acute cerebral hemorrhage" means "stroke," as the latter term is commonly used.

her death was caused primarily by the stroke that she suffered. Stonebridge indicated that it intended to call an expert witness, Dr. Paul Rizzoli, to testify that her death was attributable to the stroke, and timely disclosed Dr. Rizzoli's report. See Fed. R. Civ. P. 26(a)(2)(B). In relevant part, Dr. Rizzoli opined that:

> It is difficult to be clear based on the autopsy description, however, <u>the amount of bleeding described seems out of proportion to that which could be expected on the basis of trauma alone</u>. . . . Cerebral hemorrhage can range from unapparent to fatal in its manifestations. Thus, it is difficult to separate out which aspects of this situation related to which issue. However, <u>that cerebral hemorrhage presented in this case seems certain</u>. . . .[I]t indeed is correct to conclude that a preceding [stroke] did in fact lead to unconsciousness, that as a result, the patient fell sustaining a serious head injury, and that the [stroke] was a contributing cause of death.

(Emphasis added.)

The central issue in dispute was whether the circumstances of Anita's death precluded coverage under the policies. The insurance policies provided for coverage if the death was caused by an accident "directly and independently of all other causes," and denied coverage if the death was caused by an injury "due to disease, bodily or mental infirmity, or medical or surgical treatment of these."[2] At the final pretrial hearing, the

---

[2]One policy defined covered injuries as "accidental bodily injuries sustained by the Covered Person which are the direct Cause of the loss, independent of disease or bodily infirmity and occurring while the Certificate is in force." The other provides

-4-

court ruled that this policy language required Gay to prove that the skull fracture resulting from the fall was "the direct cause of [Anita's] death independent of any preceding medical condition; that is, that the fall, as opposed to the stroke, was the 'dominant cause' of her death."[3] Because the evidence indicated that more than one factor contributed to Anita's death -- the stroke and the skull fracture -- Gay bore the burden of separating out the consequential causes from the inconsequential causes of her death.

The court explained that if Gay proved the accident was the prime or dominant cause of death -- even if an illness or preexisting disease such as a stroke had contributed to the accident -- he would be entitled to recover under the policies. That ruling is not the subject of this appeal.

At trial, Gay argued that the head injury caused by Anita's fall was the "dominant cause" of death. In support of this claim, he presented the death certificate, the deposition transcript of the coroner, Dr. Lauro, and the testimony of a

that covered injuries means an injury which: "(1) is caused by an accident which occurs while this insurance is in full force under the Policy; (2) results in Loss covered by the Policy; and (3) creates a Loss due, directly and independently of all other causes, to such accidental bodily injury."

[3]The court based its "dominant cause" ruling on Vickers v. Boston Mutual Life Insurance Company, 135 F.3d 179, 181 (1st Cir. 1998), and Jones v. Mountain State Telephone and Telegraph Company, 670 P.2d 1305, 1312 (Idaho Ct. App. 1983).

neurologist, Dr. Matthew Gold. Each of these sources provided evidence that the skull fracture was the cause of Anita's death.

In response, Stonebridge's expert, Dr. Rizzoli, opined that the skull fracture contributed to Anita's death, but was not "a major cause of death." He elaborated, testifying that the "skull fracture as described doesn't seem like a mortal wound." Gay moved to strike this testimony because Dr. Rizzoli had only been asked whether the skull fracture had contributed to causing Anita's death, not whether it had been a major cause of her death, but the motion was denied. On cross-examination, Dr. Rizzoli conceded that his report did not expressly indicate that the skull fracture was not a mortal wound, or that the stroke was a major, as opposed to a contributing, cause of Anita's death. Gay renewed his motion to strike Dr. Rizzoli's testimony, which again was denied.

At the end of the trial, the jury returned a verdict in favor of Stonebridge. Gay moved for a new trial pursuant to Fed. R. Civ. P. 59(a), arguing that Stonebridge had failed to adequately disclose Dr. Rizzoli's opinion prior to trial as required by Fed. R. Civ. P. 26(a)(2)(B), which rendered Dr. Rizzoli's conclusion that the skull fracture was not "a major cause" of death inadmissable under Fed. R. Civ. P. 37(c)(1). The district court denied the motion, finding that the conclusion had been adequately presented in the report and that there was neither error nor prejudice resulting from the admission of Dr. Rizzoli's testimony.

Gay argues now that the testimony was erroneously admitted and that, but for this error, he may have prevailed in what he describes as "an extremely close case." He asserts that he would have presented his case differently had he known that Stonebridge intended to introduce live expert witness testimony that the skull fracture was not the dominant cause of Anita's death. In particular, he contends that rather than simply rebutting Dr. Rizzoli's testimony by reading Dr. Lauro's deposition transcript, he would have called Dr. Lauro as a witness to supplement Dr. Gold's testimony.

## II. Discussion

We review the admission of Dr. Rizzoli's testimony for abuse of discretion.[4] Peña-Crespo v. Puerto Rico, 408 F.3d 10, 14 (1st Cir. 2005). If we determine that the testimony was erroneously admitted, we then review that admission for harmless

---

[4]Stonebridge argues that our review should only be for plain error because Gay failed to make timely and specific objections to the admission of Dr. Rizzoli's testimony and so failed to preserve them for appeal, citing Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificación Familiar, 345 F.3d 15, 22 (1st Cir. 2003). We disagree. Gay moved to strike Dr. Rizzoli's testimony when those remarks were elicited on direct examination, rendering the objections timely. As for specificity, while Gay did not initially articulate the precise nature of his objection, that was at least in part because his sidebar request was denied. On review, we find that the context in which his objections were made sufficiently put the court and Stonebridge on notice of the grounds for his objection. When Dr. Rizzoli admitted on cross-examination that his report contained no opinion about the major cause of Anita's death, Gay immediately renewed his motion to strike. Certainly at that point, the specific nature of his objection was made clear.

error.  Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 480 (1st Cir. 2000).  "Our harmlessness inquiry is whether exclusion or admission of the evidence affected plaintiff's substantial rights. The central question is whether this court can say with fair assurance that the judgment was not substantially swayed by the error."  Id. (quoting Lynch v. City of Boston, 180 F.3d 1, 15 (1st Cir. 1999)).

## A.  Admission of Dr. Rizzoli's Testimony

A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B). Failure to comply with that rule may preclude the party from, "us[ing] that witness or relevant expert information to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009) (describing how violations of Fed. R. Civ. P. 26(a)(2) may implicate the sanctions of Fed. R. Civ. P. 37(c)(1)) (quoting Fed. R. Civ. P. 37(c)(1)) (internal quotation marks omitted).

Though the baseline sanction for failure to comply with Rule 26 is preclusion, preclusion "is not a strictly mechanical exercise."  Id. (quoting Santiago-Diaz v. Laboratorio Clínico y de Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006)).  The

district court has the discretion to choose a lesser sanction. Id. at 77-78 (citing Laplace-Bayard v. Batlle, 295 F.3d 157 (1st Cir. 2002) to explain the district court's "broad discretion in meting out . . . sanctions for Rule 26 violations," id. at 162). For example, allowance of a continuance to permit greater preparation for cross-examination of an expert may be appropriate. Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 22 (1st Cir. 1994).

Together Rules 26 and 37 operate to "prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion," Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004), and are designed "to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." Id. (quoting Lohnes v. Level 3 Commc'ns, 272 F.3d 49, 60 (1st cir. 2001)) (internal quotation marks omitted)).

Gay contends that Dr. Rizzoli exceeded the bounds of his report when he testified that the skull fracture was not a major cause of Anita's death because it was not a mortal wound.[5] He contends that this testimony was inconsistent with Dr. Rizzoli's previous description of Anita's skull fracture as a "significant" and "serious" injury. Gay submits that Dr. Rizzoli's report was

---

[5]In fact, Gay concedes that Dr. Rizzoli testified as expected to the extent that he said:  Anita suffered a stroke, which caused her to lose consciousness, which caused her to fall and fracture her skull and, therefore, that the stroke was a contributing cause of Anita's death.

-9-

limited to the conclusion that the stroke was a contributing cause of Anita's death, which implied nothing about the relative significance of the skull fracture or the dominant cause of death.

To bolster this argument, Gay relies on Dr. Rizzoli's statement that "it is difficult to separate out which aspect of this situation related to which issue." Gay argues that Dr. Rizzoli's testimony should have been limited to just opining that the stroke contributed to Anita's death, nothing more. Gay claims that when Dr. Rizzoli testified that the skull fracture was not a major cause of death, he necessarily implied that "the stroke [Anita] allegedly suffered was the dominant cause of her death." Because that conclusion was never disclosed in the expert report, Gay concludes, the district court erred in allowing this testimony.

The district court disagreed, finding that Dr. Rizzoli's report adequately presaged his trial testimony and, therefore, that Rule 26 was satisfied. The court determined that "Dr. Rizzoli's report was sufficiently thorough 1) to indicate the general boundaries of his direct examination and 2) to put the plaintiff on notice that the stroke was the primary cause of Ms. Gay's death" (emphasis added). After carefully reviewing both the expert report and the trial testimony, we readily conclude that the district court did not err in admitting Dr. Rizzoli's testimony, because it fell within the scope of his previously disclosed report. Neither the expert report nor the trial testimony are as limited as Gay

claims.  Dr. Rizzoli's expert report concluded, "to a reasonable degree of medical certainty . . . that [Anita] suffered a cerebral hemorrhage which led to unconsciousness and that this event led to a fall with head injury."  To support that conclusion, Dr. Rizzoli cited Anita's preexisting hypertension, her reported nausea before the events, which is symptomatic of deep brain hemorrhage, her "significant injury," which suggested that she had lost consciousness before falling, and the amount of bleeding in the autopsy report, which seemed "out of proportion to that which could be expected on the basis of trauma alone."  The district court summarized Dr. Rizzoli's report as containing at least three relevant conclusions:

> 1)    that cerebral hemorrhage presented in
>       this case seems certain;
>
> 2)    the amount of bleeding described seems
>       out of proportion to that which could be
>       expected on the basis of trauma alone;
>       and
>
> 3)    it is my opinion . . . that a preceding
>       hypertensive cerebral hemorrhage did in
>       fact lead to unconsciousness, that as a
>       result the patient fell sustaining a
>       serious head injury, and that the
>       hypertensive cerebral hemorrhage was a
>       contributing cause of death.

Gay focuses on the last portion of the third conclusion -- that the hypertensive cerebral hemorrhage was a contributing cause of death -- to argue that Dr. Rizzoli had no opinion about whether the stroke was the dominant cause of Anita's death, but

-11-

instead had only concluded that the stroke was a contributing cause of her death. Gay's argument asks us to all but ignore the information conveyed by the other conclusions. It is clear that Dr. Rizzoli's opinion expressed in the report was that fundamentally Anita suffered from a stroke. While his report suggested that both the stroke and the skull fracture contributed to Anita's death, and never explicitly stated that the stroke was the dominant cause of death, Dr. Rizzoli's report clearly focused on the stroke.[6]

Although his testimony uses different words than the expert report, it was a reasonable elaboration of the opinion disclosed in the report, that "the amount of bleeding described seems out of proportion to that which would be expected on the basis of trauma alone." See Muldrow ex rel. Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007) (explaining how Rule 26 permits an expert to supplement, explain and elaborate on material contained in his report); see also Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006) (same).

---

[6]To the extent that Gay did not fully apprehend the significance Dr. Rizzoli placed on the stroke, as compared to the skull fracture, he could have deposed Dr. Rizzoli before trial to clarify his opinion. See Poulis-Minott, 388 F.3d at 358 (explaining how expert disclosure enables the opponent to depose the expert and conduct expert-related discovery); see also Fed. R. Civ. P. 26(b)(4)(A) (allowing expert witnesses to be deposed). Had Gay pursued these options, he may have realized that Dr. Rizzoli intended to testify as he ultimately did or, alternatively, he may have had cause to argue for a Rule 37(c)(1) sanction if Dr. Rizzoli deviated substantively from his deposition testimony.

We fail to see any abuse of discretion in the district court's determination that, based on the expert report, Gay reasonably could have anticipated Dr. Rizzoli's testimony and, therefore, could not have been unfairly surprised to warrant striking the challenged testimony.  See Licciardi v. TIG Ins. Grp, 140 F.3d 357, 363-64 (1st Cir. 1998) (excluding expert witness testimony when the expert has changed his opinion on an important aspect of the case).

## B.  Harm

Because we conclude that the district court did not err when it decided to admit Dr. Rizzoli's testimony, there is no need to assess whatever harm that evidence allegedly caused.  Still, we agree with the district court's finding that Gay was not prejudiced by any differences in Dr. Rizzoli's report and his testimony, given all of the evidence of Anita's stroke.  Gay in fact offset Dr. Rizzoli's opinion with substantial evidence of his own, including the opinions of two other doctors, the death certificate, the autopsy report, and the records from both hospitals which treated Anita following her fall, to support his position that Anita had died from a "nonsurvivable closed head injury."[7]  Nor was there any offer of proof that Dr. Lauro would testify as unequivocally as Gay

---

[7]For example, during his cross examination of Dr. Rizzoli, Gay's counsel countered with Dr. Lauro's opinion "that most of the brain damage that contributed to the death was secondary to the fracture rather than to the primary hemorrhage."

hypothesizes.  Given the totality of the evidence, including the difficult credibility assessments that the jury necessarily resolved, Dr. Rizzoli's testimony cannot reasonably be understood as the pivotal evidence that tipped the verdict in favor of Stonebridge.  See Rubert-Torres, 205 F.3d at 480.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.