# United States Court of Appeals
## For the First Circuit

No. 16-2405

BARBARA J. BRADLEY and MICHAEL BRADLEY,

Plaintiffs, Appellants,

v.

DAVID J. SUGARBAKER, M.D.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Michael Bradley, pro se, with whom Barbara J. Bradley, pro se, were on brief, for appellants.
James L. Wilkinson, with whom Philip E. Murray, Jr., Carol Ann Kelly and Murray, Kelly & Bertrand, P.C. were on brief, for appellee.

May 23, 2018

**TORRUELLA, Circuit Judge**. Barbara Bradley and her husband, Michael Bradley, sued Dr. David Sugarbaker, a thoracic surgeon at Brigham and Women's Hospital in Boston, after Dr. Sugarbaker performed a surgical biopsy on Ms. Bradley that resulted in extensive complications. A trial ensued and the jury returned a verdict in favor of Dr. Sugarbaker. The Bradleys appealed, and we vacated the judgment and remanded on account of the district court's error in excluding the testimony of the Bradleys' proffered expert witness. A second trial followed, with the jury again returning a verdict in favor of Dr. Sugarbaker.

The Bradleys appeal to us once more, asserting that, on remand, the district court erred in: (1) admitting an entry from Ms. Bradley's diary under Fed. R. Evid. 807's "residual exception" to the hearsay rule; (2) admitting an excerpt from Ms. Bradley's medical records from a different hospital under Fed. R. Evid. 803(6)'s "business records" exception to the hearsay rule; and (3) determining that the Bradleys had waived their medical negligence claim. We conclude that, assuming the district court erred in admitting these two pieces of evidence, those errors were harmless. We further hold that the district court did not commit prejudicial error when it found the Bradleys to have waived their negligence claim. As a result, we affirm the district court's judgment in favor of Dr. Sugarbaker. Our reasoning follows.

**I.**

Because our first opinion pertaining to this dispute recounts the underlying facts in substantial detail, see <u>Bradley</u> v. <u>Sugarbaker</u>, 809 F.3d 8, 11-13 (1st Cir. 2015) (<u>Bradley I</u>), we provide a more succinct summary here.

**A.**

On November 9, 2004, Ms. Bradley -- still suffering from various serious injuries resulting from a car accident two years earlier -- underwent an MRI. The MRI revealed the existence of a potentially cancerous mass at the top of her right lung. On December 7, 2004, Ms. Bradley met with Dr. Sugarbaker for the first time. He told her that the mass could either be scar tissue from her car accident-related injuries or a malignant tumor, and that a biopsy would be necessary to definitively rule out cancer. Dr. Sugarbaker further explained that while he had reservations about whether a fine needle aspiration (FNA) biopsy would be feasible,[1] he would request that an interventional radiologist determine whether an FNA was possible in Ms. Bradley's case. He referred this determination to Dr. Francine Jacobson, a thoracic radiologist at Brigham and Women's Hospital. Were an FNA not

---

[1] An FNA biopsy is "an outpatient procedure in which a radiologist inserts a long, hollow needle through the skin and into the mass to extract cells," which are then microscopically analyzed. <u>Bradley I</u>, 809 F.3d at 11 n.1.

possible, Ms. Bradley would be left with the option of undergoing a surgical biopsy, a more invasive procedure.  In the interim -- and in anticipation of a potential determination that an FNA was possible -- Ms. Bradley had an appointment made for an FNA at Hartford Hospital in Connecticut.

The following day, Dr. Sugarbaker's physician's assistant, William Hung, appears to have called Ms. Bradley.  According to an entry in Ms. Bradley's personal diary, Hung relayed to her that a radiologist had determined that, due to the location of the mass in her lung, an FNA biopsy would not be possible, and that she would therefore have to undergo a surgical biopsy.  Ms. Bradley then called Hartford Hospital to cancel her appointment for an FNA there.

Dr. Sugarbaker performed a surgical biopsy on Ms. Bradley on December 17, 2004.  Ms. Bradley awoke from the operation to both good and bad news.  The biopsy had revealed that the mass in her lung was not cancerous.  But, she found herself in the hospital's intensive care unit, the procedure having left her lung with multiple air leaks, which caused her to remain in the hospital for another week.  Ms. Bradley has since experienced a number of serious and painful complications -- including pulmonary infections requiring surgery to treat -- that in 2006 forced her to leave her job as a law librarian.  See id. at 12.

-4-

The Bradleys sued Dr. Sugarbaker in federal district court in 2007. Their Second Amended Complaint alleged medical negligence, battery, and the failure to obtain informed consent. Their informed consent claim -- crucially, for our purposes -- revolved around the allegation that "Mrs. Bradley did not have enough information to "ma[k]e an informed choice [as to] whether to undergo less intrusive methods for obtaining biopsy tissue than an open surgical biopsy." Dr. Sugarbaker moved for summary judgment on all of the Bradleys' claims. The district court granted summary judgment on the Bradleys' battery claim, denied summary judgment on their informed consent claim, and did not expressly render a decision as to their negligence claim. The case proceeded to trial, and the jury ultimately returned a verdict in Dr. Sugarbaker's favor.

The Bradleys then appealed, asserting that the district court had erred both in granting summary judgment on their battery claim and in excluding as irrelevant the testimony of an expert witness they sought to call at trial. Id. at 13. We held that the district court properly granted summary judgment on the battery claim. Id. at 13-17. But, because we found that the Bradleys' proffered expert's testimony was relevant to their informed consent claim, we vacated the judgment and remanded for a new

trial.  Id. at 22-23.  Lastly, we took up the Bradleys' related contention that the expert's testimony would also have been relevant to their negligence claim.  Id.  We observed that "the negligence claim does not appear ever to have reached the jury: the verdict form only references Mrs. Bradley's informed consent claim, and the jury instructions were limited to the elements of informed consent."  Id. at 23.  Thus, "[i]n light of the poorly developed record on this issue," we left it to the district court to consider on remand whether this testimony was also relevant to any surviving medical negligence claim.  Id.

On remand, and before a different judge, the district court clarified that "retrial shall be confined to the claim at the first trial: informed consent."  The court explained that "[t]his case from the summary judgment stage through pretrial phases through trial . . . has been framed and litigated as an informed consent case."  Therefore, the court held that "to the extent that Plaintiffs pressed any negligence claim separate and apart from the informed consent claim, any such claim has been waived."

Before the second trial, the Bradleys moved in limine to exclude as hearsay an entry in Ms. Bradley's personal diary from December 9, 2004 (the "diary entry").  The entry described her conversation the day before with Hung, when he informed her of Dr.

Jacobson's determination that an FNA biopsy was not feasible.  The diary entry stated, in relevant part:

> We were told by Dr. Zellos . . . that a radiologist would need to review the PET Scan to determine if the lung biopsy can be done using a needle & a CAT Scan or whether surgery will be necessary.  The answer to this question was received on Wednesday 12/8.  We spoke with Bill Hung – the PA – on Wednesday.  This was after Michael made several calls to the Clinic in order to get some answers: Bill explained that the radiologist determined that the tumor would be too difficult to access via the CAT Scan Procedure & surgery would most likely be needed.

The district court held that the diary entry was admissible as non-hearsay to the extent that it bore on Ms. Bradley's state of mind.  It further held that the diary entry was also admissible for the truth of the matter asserted under the residual exception to the hearsay rule found in Fed R. Evid. 807.

So too did the Bradleys object to an excerpt from Ms. Bradley's records from Hartford Hospital (the "Hartford record") that Dr. Sugarbaker sought to introduce at trial.  That proffered exhibit indicated that Ms. Bradley had called Hartford Hospital to cancel her FNA appointment there.  The exhibit also included a post-it note affixed to that page of her medical records.  The post-it note bore a hand-written message, dated December 10, 2004, stating that "Brigham & Women's . . . radiologists said it doesn't look possible to [biopsy] the lesion."  The district court held that the note was substantively admissible under the business

-7-

records exception to the hearsay rule.  See Fed. R. Evid. 803(6).
At trial, counsel for Dr. Sugarbaker introduced both the diary
entry and the post-it note into evidence during his
cross-examination of Ms. Bradley.

The second trial similarly concluded with the jury
returning a verdict in favor of Dr. Sugarbaker.  The Bradleys now
appeal once more, this time arguing that the district court erred
both in admitting the diary entry and the Hartford record, and in
finding their negligence claim waived.

**II.**

**A.**

We begin with the Bradleys' claims of evidentiary error.
We review the district court's interpretation of the Federal Rules
of Evidence de novo, but its application of those Rules for abuse
of discretion.[2]  United States v. Muñoz-Franco, 487 F.3d 25, 34
(1st Cir. 2007).  When a district court has committed evidentiary
error, we will only overturn a verdict if that error has

---

[2]  We note that our case law is not perfectly clear as to whether
we review a district court's application of the residual exception
for clear error or abuse of discretion.  Compare Brookover v. Mary
Hitchcock Mem'l Hosp., 893 F.2d 411, 419 (1st Cir. 1990); United
States v. Doe, 860 F.2d 488, 491 (1st Cir. 1988) with United States
v. Burdulis, 753 F.3d 255, 263 (1st Cir. 2014); United States v.
Sposito, 106 F.3d 1042, 1046 (1st Cir. 1997); United States v.
Trenkler, 61 F.3d 45, 57 (1st Cir. 1995).  However, in light of
our ultimate conclusion that the district court's evidentiary
error was harmless, we need not take up this issue here.

compromised a party's "substantial rights." Cham v. Station Operators, Inc., 685 F.3d 87, 99 (1st Cir. 2012) (quoting Torres-Arroyo v. Rullán, 436 F.3d 472, 480 (1st Cir. 2000)). This means that the verdict will stand unless we determine that the trial's outcome was "substantially swayed by the error." Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011) (quoting Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 480 (1st Cir. 2000)).

Before embarking on this analysis, however, we find it useful to place the Bradley's evidentiary arguments in context. They claim that Dr. Sugarbaker failed to obtain Ms. Bradley's informed consent to a surgical biopsy because he did not discuss alternatives to that procedure with her. Thus, that claim required a showing that Dr. Sugarbaker had no reasonable basis to believe that no alternative to the surgery existed. And, somewhat curiously, Brigham and Women's Hospital has no record of anybody making the determination that it would not be possible to perform an FNA on Ms. Bradley. Thus, the Bradleys stress, the diary entry and Hartford record are crucial pieces of evidence because they bear on whether Dr. Sugarbaker reasonably believed that no alternative to a surgical biopsy existed about which he should have counseled Ms. Bradley.

-9-

**1.**

The Bradleys contend that the diary entry was inadmissible hearsay, and that the district court therefore erred in admitting it substantively -- that is, as evidence of the truth of what it asserted. As Fed. R. Evid. 801(c) explains, hearsay is any out-of-court statement that a party seeks to introduce as proof that what the statement asserts is true. And, under Rule 802, hearsay is inadmissible unless it fits within a recognized exception. Also relevantly, Rule 805 provides that "hearsay within hearsay" is admissible only when each level of hearsay would be individually admissible.

The diary entry effectively asserts that Ms. Bradley said that Hung said that the radiologist said that an FNA was not possible. In other words, the entry contains three layers of information: (1) that Hung told Ms. Bradley that Dr. Jacobson had determined that an FNA could not be performed; (2) that Dr. Jacobson had told Hung that an FNA could not be performed; and (3) that Dr. Jacobson had, in fact, determined that an FNA could not be performed. The district court found the first of these layers admissible under Rule 801(d)(2). That rule allows a party to introduce an opposing party's own statements against him or her. Fed. R. Evid. 801(d)(2).

The district court also found the diary entry's remaining layers of information to be admissible under the "residual exception" to the ban on hearsay. That exception, enshrined in Rule 807, provides, in relevant part, that:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) it is offered as evidence of a material fact;
>
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

We have previously stressed that whether the "proffered evidence possesses 'circumstantial guarantees of trustworthiness' equivalent to those possessed by the other listed exceptions to the hearsay rule" is the most important part of this inquiry. United States v. Trenkler, 61 F.3d 45, 57-58 (1st Cir. 1995); accord 2 McCormick on Evidence § 324 (7th ed. 2016). And in conducting that inquiry, we essentially ask this: Do any of the rationales behind the Federal Rules' enumerated exceptions to the hearsay rule also support admitting this statement? See, e.g., Trenkler, 61 F.3d at 58-59; Brookover v. Mary Hitchcock Mem'l

Hosp., 893 F.2d 411, 420-21 (1st Cir. 1990); see also 2 McCormick on Evidence § 324. Lastly, we keep in mind that Congress meant for trial courts to admit evidence under the residual exception "very rarely, and only in exceptional circumstances." United States v. Benavente-Gómez, 921 F.2d 378, 384 (1st Cir. 1990) (quoting S. Rep. No. 1277 (1974)).

In defending the district court's determination that the diary entry was admissible, Dr. Sugarbaker argues that the diary entry had circumstantial guarantees of trustworthiness equivalent to those motivating the exceptions found in Rules 803(1), 803(4), and 803(5). We, however, need not resolve this question. This is because, even if we assume that the district court erred, that error would have been harmless.

But, before discussing why, we briefly highlight a few factors that support the district court's admission of the diary. Under the circumstances, it is difficult to think of any plausible reason why Dr. Jacobson or Hung would have lied. This absence of any credible motive to fudge the truth suggests trustworthiness. Had Hung simply written into Bradley's medical file that Dr. Jacobson had told him that an FNA would not suffice, such a statement would have been admissible under Fed. R. Evid. 803(6). And since Bradley herself had no motive to fabricate that Hung made such a statement, her own diary entry would seem equal to a

business record in terms of trustworthiness. Nonetheless, as we will explain shortly, assuming error occurred, it did not result in prejudice.

**2.**

We now consider the Bradleys' arguments concerning the Hartford record, and, more specifically, the post-it note affixed to it. The Bradleys tell us that the district court should not have admitted that exhibit substantively -- that is, as evidence that, in fact, "Brigham & Women's . . . radiologists said it doesn't look possible to [biopsy] the lesion"[3] -- under Rule 803(6).

Rule 803(6) excepts "record[s] of an act, event, condition, opinion, or diagnosis" from the ban on hearsay, so long as:

> (A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;

---

[3] The post-it note actually reads that "it doesn't look possible to bx the lesion." "Bx" is an abbreviation for "biopsy." See, e.g., Smith v. Naku, No. CIV S-06-2340, 2011 WL 70564, at *7 n.5 (E.D. Cal. Jan. 7, 2011).

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

That exception, however, does not extend to "statement[s] to [a] business by a stranger to it." United States v. Vigneau, 187 F.3d 70, 75 (1st Cir. 1999). Such "'outsider' information, where offered for its truth [is inadmissible] unless some other hearsay exception applies to the outsider's own statement." Id. at 76; see also Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

At trial, Ms. Bradley testified that she was the one who conveyed the substance of that note (that it had been determined that an FNA was not possible) to Hartford Hospital. The post-it note affixed to the Hartford record therefore contained categorical "outsider information." And so, the district court should not have let it come in substantively under Rule 803(6). We note, though, that the post-it may have been admissible under Rule 801(d)(2), which provides that statements offered against an opposing party are not hearsay, as evidence that Ms. Bradley did call to cancel her appointment, and of her reason for doing so.

-14-

But the second layer of hearsay contained in the note -- that "radiologists said" that a biopsy did not appear possible -- would still have needed to come in substantively under a separate exception, which it could not have. See Fed. R. Evid. 805.

Nonetheless, this second layer of hearsay was admissible not for its truth, but to show why Ms. Bradley had cancelled her FNA appointment at Hartford Hospital. Had it come into evidence for this reason, the jury would have heard through this evidence (which corroborated what Ms. Bradley said on the stand) that Ms. Bradley believed that the radiologists at Brigham and Women's said that an FNA was not possible (putting aside for the moment whether or not that is true), and acted on this belief in cancelling her FNA biopsy.

**3.**

Neither the diary entry nor the post-it compromised the Bradleys' "substantial rights" by coming into evidence. See Cham, 685 F.3d at 99. For that reason, assuming error occurred, reversal is unwarranted.

The Bradleys argue that they suffered prejudice as the result of these evidentiary rulings because the diary entry and the Hartford record amounted to the only evidence at trial that Dr. Sugarbaker reasonably believed an FNA was not an available alternative to a surgical biopsy. Therefore, according to the

-15-

Bradleys, the jury must have relied exclusively upon this evidence when answering in the negative to the question on the verdict form "Did Mrs. Bradley prove . . . that she was not provided with sufficient material information regarding . . . available alternatives . . . ?" We disagree, however, with the premise of this argument, as the jury's conclusion that Ms. Bradley failed to prove as much does find support outside of those two pieces of evidence.

First, during direct examination, Ms. Bradley testified that she cancelled her FNA appointment at Hartford because Hung had told her that Dr. Jacobson had determined an FNA to be infeasible. Then, Dr. Sugarbaker testified -- with no objection from counsel for the Bradleys -- that "there had been a determination by our team that a needle biopsy, based on its location in that area or some other technical difficulty, was not advised." The meaning of the word "advised," is somewhat unclear here. However, Dr. Sugarbaker's later testimony clarifies that his team had concluded that an FNA was not a possible alternative to surgical biopsy.

This means that the jury heard the following from sources other than the diary entry and the Hartford record: (1) it had been determined that an FNA wasn't possible; (2) this information had been communicated to Ms. Bradley; and (3) that determination

-16-

was the reason that Ms. Bradley cancelled her FNA at Hartford Hospital. Thus, Ms. Bradley and Dr. Sugarbaker's combined testimony effectively brought to the jury's ears exactly the same information contained in the diary entry and Hartford record. The Bradleys protest that they only pursued this line of questioning during Ms. Bradley's direct examination because of the district court's earlier ruling admitting the diary entry and Hartford record. But even if this is so, we cannot ignore that the jury still heard Dr. Sugarbaker testify that his team had ruled an FNA out as a possible alternative. See, e.g., Ohler v. United States, 529 U.S. 753, 755 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."); Tersigni v. Wyeth, 817 F.3d 364, 370 (1st Cir. 2016) (plaintiff waived the right to appeal the admission of evidence after unsuccessfully moving to exclude it in limine because plaintiff introduced the evidence herself during trial). And therein lies the rub.

Additionally, at oral argument, the Bradleys intimated that this nonetheless did not amount to harmless error because the documentary evidence that the district court admitted, while cumulative, had the effect of bolstering Dr. Sugarbaker's own self-serving testimony. Thus, they say, the diary entry and Hartford record served to undercut the notion that Dr. Sugarbaker had lied

-17-

about an FNA being infeasible.  This argument, however, fails to convince us.  We first note the paucity of evidence in the record suggesting that Hung or Dr. Jacobson had any reason to misrepresent that an FNA had been ruled out, or that they in fact did misrepresent as much.  It is also worth noting that Dr. Sugarbaker testified that a determination as to whether an FNA was possible for a given patient would "[n]ot usually" be documented. Moreover, one of Dr. Sugarbaker's expert witnesses -- Dr. Jones, a thoracic surgeon -- offered his conclusion, based on reviewing Ms. Bradley's medical records, that "the location and rather diffuse nature [of the mass in her right lung] would have made it challenging" to obtain a diagnosis from an FNA.  While the Bradleys' expert witness essentially presented the opposite conclusion -- that an FNA would have been feasible -- Dr. Jones's testimony nonetheless further erodes the possibility that Ms. Bradley was incorrectly informed that an FNA had been ruled out.

In summary, given Ms. Bradley's own testimony at trial about what Hung told her, the two writings to that effect did little work because no party challenged Ms. Bradley's testimony and the writings simply aligned with that testimony.  Even if the two writings had not come in for the truth of what the radiology department concluded, the evidence would nonetheless have bolstered the conclusion that Dr. Sugarbaker reasonably thought an

-18-

FNA was infeasible. Having considered these two pieces of evidence "in light of the entire record," <u>Zachar</u> v. <u>Lee</u>, 363 F.3d 70, 76 (1st Cir. 2004), we feel confident that the diary entry and the Hartford record are not what tipped the scales towards the jury's ultimate conclusion. Because we "can say with fair assurance that the judgment was not substantially swayed by," <u>Gay</u>, 660 F.3d at 62, the assumed error, we hold that the jury's verdict should stand.

## B.

Lastly, the Bradleys press that the district court erred in finding their medical negligence claim waived. We disagree.

The Bradleys' Second Amended Complaint advanced various theories of negligence. Among other things, it alleged that Dr. Sugarbaker was negligent in representing that a surgical biopsy was the only option and also that he performed that procedure in a negligent fashion. Dr. Sugarbaker moved for summary judgment on all of the claims in the Second Amended Complaint. The district court's summary judgment order, however, only explicitly addressed the Bradleys' battery and informed consent claims (granting summary judgment on the former but not the latter).

At a status conference before the beginning of the first trial, the Bradleys highlighted that the district court's summary judgment order was ambiguous as to whether their negligence claim

-19-

had survived summary judgment. The Bradleys then explained that their negligence claim consisted of the contention that failing to discuss viable alternatives to surgical biopsy amounted to a breach of the standard of care. The district court expressed its skepticism that this claim was distinct from their informed consent claim. In response, the Bradleys raised the possibility of filing a motion for clarification of the summary judgment ruling. The district court told them that they could discuss that possibility with opposing counsel and "see how necessary you think that may be." The Bradleys, however, never filed a motion for clarification.

All of this first suggests that -- by failing to continue to pursue it after this pretrial conference -- the Bradleys waived any negligence claim not involving Dr. Sugarbaker's failure to discuss alternative procedures that may have survived summary judgment.[4] See In re Net-Velázquez, 625 F.3d 34, 40-41 (1st Cir. 2010) (finding that plaintiffs had waived claims they failed to raise during a pretrial conference -- which resulted in the district court omitting those claims from its subsequent pretrial order -- and explaining that "[a] defense or legal theory may not

---

[4] For example, this would include the claim -- which the Second Amended Complaint appears to have made -- that Dr. Sugarbaker performed the surgical biopsy in a negligent manner.

-20-

be preserved by bare reference in a pleading if it is thereafter abandoned until, freshly discovered on appeal, it is raised anew"); see also Fed. R. Civ. P. 16(c)(2)(A) ("At any pretrial conference, the court may consider and take appropriate action on [matters including] formulating and simplifying the issues, and eliminating frivolous claims or defenses.").

All of this additionally suggests that, even if the district court erred in finding that the Bradleys had waived all of their negligence claims -- for example, because they never relinquished those involving an "absence of informed consent" theory of negligence -- prejudice nevertheless did not result. Like the district judge who oversaw the motions for summary judgment, we express our skepticism over whether such a theory of negligence would actually amount to a distinct claim from the Bradley's informed consent claim. But even if we assume that these were distinct claims, we cannot escape the conclusion that the Bradleys would have lost on this theory of negligence anyway. This is because, as the Bradleys framed it, their informed consent claim would effectively constitute a necessary element of their negligence claim: breach of the applicable standard of care. And so, it would have been impossible for the Bradleys to prevail on that negligence claim while losing on their informed consent claim. Thus, even if the district court erred in finding such an "absence

of informed consent" negligence claim waived, the Bradleys cannot have suffered prejudice as a result. Accordingly, none of the Bradleys' waiver-related arguments call for reversal.

### III.

The Bradleys did not suffer prejudice because of the district court's decision to admit the diary entry or the Hartford record. Additionally, any error the district court may have committed in finding their negligence claims waived would likewise have been harmless. The district court's judgment is therefore affirmed.

**Affirmed**.